No. 18.—RICHARD R. RESPASS, plaintiff in error, *vs.* JOHN YOUNG, defendant in error.

[1.] In an action of trover, for the recovery of a slave, alleged to have been *loaned* by a father to his daughter, and the evidence was conflicting, as to whether it was a *gift* or a *loan* of the slave in controversy : *Held,* that on the trial, it was the duty of the Court, to have instructed the Jury what *the law* required to constitute a valid *parol gift* of the slave in question ; and also, what the law denominates a *loan* of the slave, and then to leave the Jury to decide, from the whole of the evidence, whether it was a *gift* or a *loan;* and that it is error for the Court to express any opinion to the Jury, as to whether the evidence proves a *loan* of the slave or a *gift;* but that the question of *loan* or *gift,* is *exclusively* for the consideration of the Jury, from the whole of the evidence submitted.

Trover, in Marion Superior Court. Tried before Judge IVER-SON, September Term, 1851.

This was an action of trover, brought by John Young against Respass, for a negro girl named Ann. The defendant below claimed the negro as a purchaser, from Eason Joiner, the son-in-law of Young, and to whom the defendant alleged a gift of the negro. Upon the trial of the case, it was proved by Marion Young, that in 1841, his father told him to take the girl, Ann, to the house of James West; that he carried her as far as Hardy Hunter's, where his sister was, and left her there, but shortly afterwards, she was at the house of West, but how she got there witness did not know. Jas. West proved, that in 1839 or 1840, Mrs. Joiner, then a girl about sixteen years old, came to his house and asked him if he would take the girl, Ann, and keep her for her victuals and clothes ; that he agreed to keep her on those terms, and did keep her under that agreement nearly two years ; that during that time, Young, the plaintiff, visited his house several times, and did not claim the girl ; he saw her, but said nothing about her. Miss Young claimed the girl, and witness held her as the property of Miss Young ; that in 1841 or 1842, Miss Young married Eason Joiner; that they went to house-keeping in about a month afterwards, and took the girl

Ann, from his house, home with them ; and that Young visited h s daughter frequently after her marriage.   The depositions of Hardy Hunter were offered in evidence, stating, among other things, " that Mrs. Joiner requested him to see her father and get him to let her have the girl, (Ann) to wait on her; that he went to see Young, who consented, under the condition that the negro was to be returned when called for.   In 1847, Young called for the girl, and she was delivered to him.   Young afterwards let Mrs. Joiner carry the girl home again, but witness did not know the conditions ; *but he never understood it as a gift.*" To that portion italicized, counsel for Respass objected.   The Court admitted the evidence, and this is the first error assigned.

The depositions of Dolly Hunter were also offered in evidence, stating, " that Mrs. Joiner requested her to get her father to let the girl, Ann, come and wait on her; that she got the girl and brought her to Mrs. Joiner; and that she (witness) and her husband pledged themselves to return the girl when Young should call for her; Young called for the girl and she was returned to him; she understood the girl to be a loan, and as far as she knew, Young always reserved the right to take back the girl when he pleased."

Counsel for Respass objected to all of this deposition, which, being overruled by the Court, error has been assigned upon this decision.

A great deal of testimony was submitted to the Jury, which it is unnecessary to repeat.   Among other things, it was proven, that Young, at one time, demanded the negro of Joiner, who refused to give her up.   A quarrel ensued, in which Joiner told Young there was a law and to go to it, whereupon Young said he would not go to law; that Mrs. Joiner might have the girl.

The Court charged the Jury, that " if Young demanded the girl of Joiner, and he refused to give her up, but told Young there was a law and to apply to it, and Young said, rather than go to law, he might have the negro, this was no evidence of a gift."   To this charge Respass excepted, and has assigned error thereon.

The Court farther charged, that " if Young put the negro

into the possession of his daughter as a loan, to be returned to him when called for, and then took the girl back into his possession, and in this way the girl repeatedly passed from Young to his daughter, and then back to Young; and after this, Young allowed the girl to go into the possession of his son-in-law, without explanation or qualification of the possession, the same did not amount to evidence of a gift; but the law would presume it was a transaction similar to those that had previously occurred."

This charge also is assigned as error.

WORRILL, and B. HILL, (representing W. D. ELAM,) for plaintiff in error.

E. R. BROWN, for defendant.

*By the Court.*—WARNER, J. delivering the opinion.

The first ground of error assigned in the record, is the admission in evidence of that portion of Hardy Hunter's testimony, in which he stated, that " Young afterwards let Mrs. Joiner carry the girl home again, but did not know the conditions; *but he never understood it as a gift.*" The objection is, that the witness never "*understood it as a gift.*" The amount of this evidence is, that the witness did not *know* whether the negro went into the possession of Joiner and wife, the second time, as a gift or a loan; he says he did not *know the conditions* on which she went into their possession, but never understood it as a gift. This portion of the evidence proves nothing; it is entirely *negative* in its character, and could not have influenced the mind of the Jury either way, on this point. We affirm the judgment of the Court below, on the ground that it did not *prejudice* the rights of the defendant. The fact that the witness never understood it as a gift, did not alter or change the *legal effect* of the transaction.

The same remarks are applicable to that portion of the testimony of Dolly Hunter, which was excepted to on the trial. Af-

ter proving a loan of the girl, Ann, by the plaintiff on one occasion, after the marriage of Mrs. Joiner, she states that the girl was returned to Young, on his calling for her. The witness appears to have been the friend and agent of both the parties, in regard to the particular transaction. The witness *proved a loan of the negro,* and further states, she " understood it to be a loan, and as *far as she knew,* Young always reserved the right to take back the girl."

Her *understanding* evidently relates to the particular transaction, in regard to which, she acted as the *agent* and friend of all the parties. We therefore overrule this exception.

[1.] The main question made by the record, is in regard to the charge of the Court to the Jury. The point in controversy between the parties was, whether the girl, Ann, went into the possession of Mrs. Joiner and her husband, as a *gift* or as a *loan.* In regard to this question, the evidence is conflicting.

There is, undoubtedly, evidence in this record, from which the Jury might legally have presumed a gift of the girl, Ann, by Young to his daughter. Marion Young states, that in 1841, his father, the plaintiff, told him to take the girl to the house of James West; that he carried her as far as Hardy Hunter's, where his sister, Mrs. Joiner, then was, and left her; that shortly afterwards, the negro was at the house of James West, but how she got there, witness did not know.

James West states, that in 1839 or 1840, Mrs. Joiner, then a girl about sixteen years old, came to his house and asked him if he would take the girl, Ann, and keep her for her victuals and clothes; that he agreed to keep her on these terms and did keep her, under that agreement, in his possession for almost two years; that during the time the negro was at his house, the plaintiff visited him several times; saw the negro there, did not claim her, nor say anything about her. Witness held the negro as the property of Miss Young; that she claimed her as her property; that in 1841 or 1842, Miss Young married Eason Joiner; that they went to house-keeping in about a month afterwards, and took the girl, Ann, from his house home with them; that the plaintiff visited his daughter frequently after her marriage,

and within a short time thereafter. Hardy Hunter and Dolly Hunter prove a loan of the girl to Mrs. Joiner after the marriage; but at what time, the record does not state. This loan was on condition that the girl was to be returned when the plaintiff called for her; that the plaintiff did call for her in 1847, and she was returned to him; that Young, the plaintiff, *let Mrs. Joiner carry the girl home with her again, but witness did not know the conditions on which the girl went to Joiner again,* but never understood it as a gift.

John Fulwood states, that Joiner had the girl in possession about eight years; that he heard the plaintiff tell Mrs. Joiner she might have the girl, Ann, and he would not go to law for her; this was at Joiner's house. On *the next day he heard Young again tell Mrs. Joiner she might have the girl.* Here it is important to note the fact, that it was in the *first* conversation that Young told his daughter she might have the girl, and that he would not go to law for her; but in the conversation stated on the *next day,* nothing was said by Young about *the law,* but told his daughter *she might have the girl.* In view of the evidence contained in this record, a due regard to the rights of the defendant required, in our judgment, that the Court below should have instructed the Jury, as to what the law required, to constitute a good parol gift of the slave in question, and also, what the law denominates a loan; and then to have left it to the Jury, without any expression of opinion, whether the evidence of Fulwood, or that of the other witnesses, established a gift, or loan of the slave to Mrs. Joiner. The Jury would have been authorized to have presumed a gift of the slave by Young to his daughter, from the evidence of West; also, from the evidence of Hardy Hunter, that the negro went into the possession of Joiner and wife, *after she had been returned, without any conditions,* so far as the witness knew; also from the evidence of Fulwood, that Young said his daughter might have the negro, on *the next day* after the *first* conversation proved by him—the negro then being in the possession of Joiner and wife. *Teague vs. Griffin,* 2 *Nott & McCord,* 93. *McCluney vs. Lockhart,* 4 *McCord's Rep.* 251. If the Jury had found in favor

of the gift, we should have refused a new trial, on the ground that such a verdict had been rendered, *without evidence* to support it. So, if the Jury had found, as they have done, against the gift, without any expression of the Court, as to the *sufficiency* of the evidence to establish the gift, and the question of gift or a loan had been fairly submitted to the Jury upon the *whole evidence* contained in the record, we should not have granted a new trial.

There is evidence in the record, from which the Jury might have presumed a *gift* of the slave; there is also evidence in the record from which the Jury might have presumed a *loan* of the slave. The *facts proved*, as well as the *credibility* of the witnesses, were *exclusively* for the consideration of the Jury. In our judgment, the Court below erred in expressing any opinion as to whether any portion of the evidence submitted to the Jury, made out a *gift* or a *loan* of the slave. Had a *gift* or a *loan* of the slave been *proved* under the law? was *the question* for the Jury to decide, upon the *whole of the evidence submitted.* See the Act of 1850. *Cobb's New Digest*, 462.

Let the judgment of the Court below be reversed.