PATRICK FLOOD, Appellant, v. ADOLPHUS BUSCH et al., Respondents.

St. Louis Court of Appeals. Argued and Submitted March 7, 1912. Opinion Filed April 2, 1912.

1. FRAUD AND DECEIT: Sale of Corporate Stock: Rescission: Sufficiency of Evidence. In an action for a rescission of the sale of corporate stock and a return of the purchase price, on the ground that the person through whom the sale was effected (alleged to be the agent of defendants) had made fraudulent misrepresentations concerning same, *held,* that the evidence did not show fraudulent misrepresentations were made; *held, further,* that the evidence did not sustain an averment of the petition to the effect that the stock was valueless when purchased by plaintiff.

2. ————: Establishment: Presumptions: Burden of Proof. Fraud will not be presumed, but must be clearly and distinctly proved by the person alleging it.

3. APPELLATE PRACTICE: Equity Cases. While, in a suit in equity, the appellate court is not bound by the conclusion arrived at by the trial court on the evidence, great deference will be paid to it, even to the extent of accepting it absolutely, when the evidence is conflicting and the trial court had the opportunity of hearing and seeing the witnesses.

4. CORPORATIONS: Rescission of Sale of Stock: Fraud: Liability of Stockholders. Where a person who induced another to purchase shares of stock was the agent of the corporation issuing the stock, and there was no evidence that individual stockholders took part in, sanctioned, or knew of his alleged misrepresentations inducing the sale, they could not be held liable therefor, in an action to have a rescission of the sale and a return of the purchase price.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey*, Judge.

AFFIRMED.

*John P. Leahy* for appellant.

(1) Any fraud perpetrated on a third party in the course of his employment and for the benefit of his principal must be imputed to the principal, whether or not the latter had actual knowledge of it. Judd v. Walker, 215 Mo. 312; Kayser v. Kinkle, 127 Mo. App. 62. The defendants permitted the agent to sell the stock and statements concerning the value of the same are within his apparent authority. Darks v. Grocer Co., 146 Mo. App. 246. To represent that the property of the corporation is unencumbered is a fraudulent representation. McClellan v. Scott, 24 Wis. 81; Water Valley Co. v. Seaman, 53 Mass. 655; Lynch v. Land & Lumber Co., 155 Mo. App. 672. Or that the company would pay certain dividends. Lawton v. Kittredge, 30 N. Y. 500. Or that certain individuals were directors. 34 Beav. 639. (2) Purchasers of worthless stock may rescind and recover money paid for same if purchase was induced by a fraudulent board of directors. Taylor on Private Corporations, sec. 103; Cook on Stockholders, 157; Beach on Private Corporations, sec. 159; Seddon v. Virginia, etc. Co., Fed. Rep. 6. He may sue in equity for rescission, or for damages for the deceit. Ligon v. Minton, 125 S. W. 304. (3) While the Supreme Court is inclined to defer to the findings of the trial court, it has never abdicated its right to

review these findings in chancery cases. Glassock v. Glassock, 217 Mo. 362. It will review the evidence and determine for itself whether or not he came to the right conclusion from it. Bank v. Nichols, 202 Mo. 309; Bank v. Fry, 216 Mo. 24.

*Reynolds & Harlan* for respondents, Arthur W. Lambert and Henry Koehler, and *Nagel & Kirby* and *E. G. Curtis* for respondents, Adolphus Busch and Edward A. Faust, filed argument.

REYNOLDS, P. J.—This suit was instituted in the circuit court of the city of St. Louis, against Adolphus Busch, Edward A. Faust, Arthur W. Lambert and Henry Koehler. In his petition plaintiff avers that on the 24th of May, 1907, and for sometime previous thereto, defendants were shareholders and directors in the North American Steel Company, a corporation of the state of West Virginia, having an office in the city of St. Louis, and at the times stated in the petition owned and controlled the whole or a majority of the stock of the corporation; that being desirous of obtaining money to pay the debts of the corporation, which they themselves had contracted, they employed one Charles D. Bolin as their agent to sell a portion of the capital stock of the corporation "which they, the defendants, owned;" that in order to persuade and induce plaintiff to purchase twenty shares of the capital stock of the corporation, defendants, through their agent Bolin, represented to plaintiff that the corporation was then in a flourishing condition; that there were no debts due by it; that the building, the land upon which the same was situated, the machinery and all other property of the corporation was free from incumbrances; that the plant was being operated at a great profit to the shareholders; that the holders of preferred stock in the corporation had received a dividend of six per cent; that the corporation had orders

to fill for a year ahead and which would keep the plant working for that time; that the stock offered for sale by defendants was part of treasury stock owned by them and that the proceeds of the sale thereof would be used for the purchase of machinery which would greatly cheapen the cost of production of planished steel; that defendant Busch, "a wealthy brewer of St. Louis," had invested large sums of money in the corporation, had taken a deep interest in its affairs and was one of its promoters and directors; that believing all these statements and representations to be true plaintiff, on the 24th of May, 1907, purchased from defendants ten shares of the preferred and ten shares of the common stock of the corporation, paying defendants therefor the sum of $1000. Plaintiff further avers that the representations made by Bolin, that defendant Busch was at that time a director of the corporation, had taken a deep interest in its affairs and was a promoter thereof and a large shareholder therein, were true, but that every other statement and representation made by Bolin as the agent of defendants was false, and that these false statements and representations were made by defendants through their said agent Bolin for the purpose of deceiving, misleading and defrauding plaintiff. It is further averred that the property of the corporation at the time mentioned consisted of a small and antiquated plant for the manufacture of planished steel, which had been acquired from another corporation and which was incumbered by a bond issue of $50,000, that being its full value, the payment of which the North American Steel Company assumed; that defendants. as promoters of the North American Steel Company acquired this plant without the expenditure of a single dollar, having previously capitalized the North American Steel Company for $1,300,000, and had paid for the plant by stock of the latter company issued to the owners of the

plant; that although capitalized for $1,300,000, the North American Steel Company had no other property, real or personal, than the above mentioned plant and materials and stock in trade not exceeding the value of $15,000 at any time; that at the time the stock of the North American Steel Company was purchased by plaintiff it was indebted to an amount far in excess of its assets, that it was being operated at a loss "and never paid a dividend to the shares," was still incumbered by the bonds before mentioned, was insolvent, and a few weeks later the plant, by the orders of Busch and his codefendants was shut down and has not since been operated; that none of the defendants have invested any of their own money in the corporation, except that defendants Busch and Koehler have indorsed certain promissory notes of the corporation to an amount aggregating $30,000, which notes have not yet matured; that no portion of the money paid by plaintiff for the purchase of stock was used by defendants to purchase any new machinery but was used by defendants either for their own use or to pay off the indebtedness of the corporation which they themselves had contracted; that by reason of the facts above set out the stock, at the time plaintiff purchased it, was and is now utterly valueless, and that the corporation is now indebted to an amount far in excess of its assets. Plaintiff, tendering defendants the twenty shares of stock prays for a decree rescinding the sale, ordering and requiring defendants to pay back to plaintiff the sum of $1000, with interest thereon from May 24, 1907, and for general relief.

Defendants answered by general denial.

At the conclusion of the trial the court entered a judgment in favor of defendants, from which, after filing a motion for new trial and saving exception when that was overruled, plaintiff has duly appealed to this court.

We have read all of the rather voluminous testimony in this case and on careful consideration of it find no reason to differ from the conclusion arrived at thereon by the learned trial judge. In point of fact, an examination of the testimony in the case fails to satisfy us that plaintiff has established a single one of the material allegations in his petition.

It is not proved that these defendants owned and controlled the whole or the majority of the stock of the corporation. They were large shareholders in it, but their individual or collective holdings are not in evidence.

It does appear that all of them, except defendant Busch, were directors, but there is no evidence as to who actually composed the board of directors, or even that Koehler, Lambert and Faust were a majority of the board. The only control of the stock of the corporation by defendants, so far as shown, is in the sense that the directors are the managers and whatever stock may be in the treasury of the company, unsubscribed or undisposed of, may be said to be in their control through their official positions, but they most certainly are not the owners of it save in the sense that all stockholders in a company may be said to own all the unsold stock of the company.

Nor is there any evidence in the case that these defendants were desirous of obtaining money to pay debts of the corporation which they had contracted. It may be true that those of the defendants who were directors, as directors, had contracted company debts but there is no evidence that they did so as individuals, and there is no evidence that this money was obtained or applied for the purpose of paying the debts of the corporation.

The evidence fails to prove that these defendants, as individuals, employed one Charles D. Bolin as their agent to sell a portion of the capital stock of the corporation which they, as defendants, owned. The em-

ployment of Mr. Bolin, if such it may be called, was through Mr. Koehler, the treasurer of the company. The testimony as to this matter tends to show this state of facts: At a meeting of the board of directors of the North American Steel Company, held in St. Louis on the 21st of April, 1907, the board adopted a resolution, "that the treasurer of this company be and he is hereby authorized to sell not to exceed $200,000 par value of the treasury stock of this company. Said stock to be sold at not less than par, upon such terms and conditions as the treasurer may fix. The proceeds of said sale to be put into the treasury of the company, and used for general corporate purposes." Mr. Bolin's testimony as to his connection with this matter is to the effect that he went to the office of the treasurer, Mr. Koehler, some time after the adoption of this resolution and suggested that he (Bolin) would sell some of this treasury stock for the company, and the treasurer authorized him to do so, suggesting to Mr. Bolin that the company would probably allow him compensation or commission for selling the stock, paying him the commission in stock or in some other way satisfactory to him. In point of fact, however, it appears that Mr. Bolin, who was himself a stockholder and afterwards a director, refused to accept any commission in connection with the matter, though making sales of stock to a number of persons, among others to this plaintiff. This was the sole employment of Bolin and it is uncontradicted, in fact is corroborated by Koehler. It is clear that the employment was by the North American Steel Company and not by these defendants, not even by defendant Koehler as an individual but as treasurer of that company. It was through Bolin's representations that plaintiff purchased ten shares of stock for $1000, receiving in connection with it and as a bonus ten shares of the common stock, all of the par value of $100 per share.

It is not established by the evidence, as averred in

the petition, that this stock which Mr. Bolin was to sell was the individual stock of, owned by, defendants. As a matter of fact it was unissued stock belonging to the North American Steel Company, in the treasury of that corporation, and in no sense the property of defendants, either individually or as directors. Plaintiff paid for it through a check payable to the order of the North American Steel Company; the check was delivered to Bolin and by him to Koehler, as treasurer of that company, who as such officer transmitted the certificates to plaintiff by mail.

When we consider the testimony of plaintiff and Bolin as to the representations made to plaintiff by Bolin and on which plaintiff claims he relied in purchasing the stock, it is sufficient to say that it presents an irreconcilable conflict and is absolutely at variance on practically every material point as to what took place between them. This is so with one exception. Mr. Bolin admitted that he told plaintiff that the stock ''was paying six per cent dividend.'' Reading over the testimony of Mr. Bolin, given in connection with this statement, we take the same view of it that evidently was taken by the learned trial court. This preferred stock provided on its face that the holders of it should be entitled to dividends up to the amount of six per cent per annum before any dividend should be paid upon the common stock. We take it, from a consideration of all the testimony, that all that Bolin was explaining to plaintiff was that this was six per cent stock.

The North American Steel Company appears to have been incorporated about January, 1906; was capitalized at one million dollars common and three hundred thousand dollars preferred stock. Plaintiff is not an ignorant man: he is bookkeeper for a well known and long established business house in St. Louis. That the company, at the time of the negotiation of this sale of stock to plaintiff, was a going concern, is shown by

the testimony, and that testimony further shows that at that time it was in no sense a bankrupt concern.

We find no evidence to sustain any charges of fraudulent representations as to this North American Steel Company. It appears that within a short time after the sale of this stock to plaintiff, the financial panic which overtook the country in the fall of 1907, did affect it, as it did a multitude of other concerns in like business, or, for that matter, in many other lines of business, but it is very clear from the evidence in the case that the parties who were then interested in promoting and carrying on the company honestly believed and had every reason to believe that the enterprise was not only one that would pay but that an investment in it was absolutely secure and bound to yield very great profits. The averment of plaintiff, that all that the property of defendants, when plaintiff purchased the stock, "consisted of a small and antiquated plant for the manufacture of planished steel," is not sustained by the evidence. Among the assets acquired by the corporation on its organization was the ownership of a secret process for the manufacture of planished steel, a product very similar to what is known as Russia iron. From the testimony in the case it is very evident that all those interested in it at the time of the transaction with this plaintiff were exceedingly sanguine as to the future outcome of the operations of the company. It is fully established that defendant Busch, as well as Koehler and others, had invested large sums of money in the corporation; that Busch had taken a deep interest in its affairs and was one of those who had assisted in its organization, but it is proved beyond controversy that neither at the time when plaintiff purchased this stock nor at any other time, was he either a director or officer of the North American Steel Company.

There is no evidence to show that the valuation placed on the old plant and the planished steel secret

process was excessive or made with the knowledge of being excessive or that values were fraudulently swollen.

. Nor does the evidence establish as a fact that at the time of the purchase of the stock in the North American Steel Company by plaintiff, that company was indebted to an amount far in excess of its assets or that it was being operated at a loss, although the evidence does show and it was admitted by counsel for defendants, that up to that time it had never paid a dividend on its shares.

It is in evidence that the plant was closed down later, in point of fact probably sometime in July, 1907, but it is not proven that this was done by the orders of defendant Busch; to the contrary, the evidence is that this was done by Mr. Harris, then treasurer, on consultation with other directors, but without any consultation with defendant Busch, who was then on his way to Europe. After that it was not operated save to finish up some stock on hand, and in an effort to save something out of the wreck. It is also true that under the decree of a local court in West Virginia it was subsequently sold out by a receiver who had been appointed to take charge of the affairs of the company for something like $50,000. This sale was made sometime between July 29, 1909, and January 11, 1910. That, however, did not prove the value of it at the time plaintiff invested in the enterprise, which was in June 1907, or that defendants or anyone else then anticipated any such result. Between plaintiff's investment and the sale, a financial and business panic had occurred.

It is not proven that the only investment defendants Busch and Koehler made in the company was by way of indorsement of certain promissory notes of the corporation to an amount aggregating $30,000. In point of fact the evidence shows that not only Busch and Koehler but others had invested large sums of

money in the enterprise, Busch something like $60,000, Koehler a large amount, over and above their indorsements on notes which the company negotiated. The evidence tends to show that these defendants had been obliged to take up these notes themselves and had not been reimbured by the company.

Nor is the allegation in the petition that no portion of the money paid by plaintiff for the purchase of the stock was used by defendants to purchase any new machinery but was used by them for their own use or to pay off the indebtedness of the corporation which they themselves had contracted, sustained by the evidence.

In short, the evidence of plaintiff wholly fails to sustain the averments in his petition that at the time plaintiff purchased the stock it was utterly valueless, although it is possibly true that at the time of the institution of the action that was a fact.

An accepted authority, Kerr on Fraud & Mistake (2 Ed.), says (l. c. 448): "A man who alleges fraud must clearly and distinctly prove the fraud he alleges. The *onus propandi* is upon him to prove his case as it is alleged in the statement of claim. If he complains of fraud in the prospectus of a company, it is for him to prove that it was false, and false to the knowledge of the defendant, or at all events that he did not believe it, and it is for him to prove that he was misled. If the fraud is not strictly and clearly proved, as it is alleged, relief cannot be had, although the party against whom relief is sought may not have been perfectly clear in his dealings. Fraud may not be carried by way of relief one tittle beyond the manner in which it is proved to the satisfaction of the court. . . . The rules of evidence are the same in equity as at law. Whether certain facts, as proved, amount to a fraud, is a question for the court as well at law as in equity. . . . The law in no case presumes fraud. The presumption is always in favor of innocence, and not of

guilt. . . .. Fraud is not to be assumed on doubtful evidence. The facts constituting fraud must be clearly and conclusively established.''

Our own Supreme Court, in Hardwicke v. Hamilton, 121 Mo. 465, l. c. 473 (26 S. W. 342), has held: ''Fraud is never presumed but must be proved, yet it is not necessary that it be shown by direct evidence; it may be established by facts and circumstances and the burthen of proof rests upon him who asserts it to make it manifest.''

In the case at bar we do not find fraud established either by direct evidence or by facts and circumstances.

While in a suit in equity the appellate court is not bound by the conclusion arrived at by the trial court on the evidence, great deference is always paid to that conclusion, even to the extent of accepting it absolutely when the evidence is conflicting and the trial court has had the benefit of hearing and seeing the witnesses who gave it.

Over and above this, there is no evidence that these defendants took part in, sanctioned, or knew of Bolin's alleged misrepresentations. They could be held responsible here only upon the theory that he acted as their agent and there is no evidence to sustain such a theory. On the contrary the evidence shows beyond controversy that he was employed by and acted solely as the agent of the corporation and not of these defendants.

In the view we take of the case, we do not consider it necessary to go into a critical examination of the authorities cited by the learned counsel for appellant, although we have considered all of them as well as of the several points that counsel relies upon for a reversal. His points and authorities will doubtless appear in the official report of this case. His propositions of law are, in the main, correct, but we are compelled to say that they are inapt as applied to the facts in

this case. Thus, the facts in Hornblower v. Crandall, 7 Mo. App. 220, affirmed 78 Mo. 582, followed in Baker's Admr. v. Crandall, Ibid., 584, and Whiting's Admr. v. Crandall, Ibid., 593, and the like, are entirely different from those in the case at bar.

The question of laches on the part of plaintiff in tendering a return of the stock and in bringing suit is raised, but not pressed by counsel for respondents. In the view we take of the case it is unnecessary to either consider or pass upon it.

The judgment of the circuit court is affirmed. *Nortoni* and *Caulfield, JJ.*, concur.