## PAUL THOMAS GITTINGS, Appellant, v. TRACY L. JEFFORDS et al.

### Division One, March 14, 1922.

1. **WILL CONTEST: Foreign Will: Instruction Not Peremptory.** In a proceeding to contest a foreign will where there was no contention that the certified copy produced was not a certified copy of the original writing, àn instruction, by the opening clause of which the issue was defined to be whether the paper writing, a certified copy of which was introduced in evidence, was the last will and testament of the testatrix, and by a later paragraph the jury were instructed that if they found "that the paper writing here produced is not a certified copy of the original writing and that the original was not the will of" the testatrix "your verdict will be in this form: 'We the jury, find that the paper writing produced and read in evidence as being a certified copy of the original will' of the testatrix, 'dated February 18, 1918, is not the will of said deceased,'" did not amount to a peremptory instruction against plaintiff.

2. ————: ————: **Fraud: Pleading.** In a proceeding to contest a will on the ground that it was procured by fraud upon the testatrix the petition must specify the act or acts constituting the fraud and must allege the representations, if any, that were made to the testatrix and that they were false and known to be so by the defendant, and that they were made with the intent to deceive and did deceive the testatrix and that relying upon such representations she was induced to act to plaintiff's injury.

3. ————: ————: ————: **Evidence: Burden of Proof.** In a proceeding to contest a will on the ground of fraud, the fraud will not be presumed, but must be proved, and the burden of proving it is upon him who asserts it; and the proof must be of the precise specification of fraud pleaded.

4. ———: ———: ———: **Instruction.** In a proceeding to contest a will, it is not error to fail to embody in an instruction the issue of fraud in procuring the will to be made, where the issue of fraud is not properly raised by the pleadings, and where there is no evidence to support the allegations of fraud as made.

5. ———: ———: **Instruction: Comment on Evidence.** In a proceeding to contest a will, the trial court properly refused an instruction which told the jury that the checks introduced in evidence given by the chief beneficiary of the will to the testatrix and indorsed by her "are not in themselves sufficient evidence" that the testatrix "was indebted to" said beneficiary "in any sum whatever. The checks are merely proof that" the beneficiary "paid to said" testatrix "the amounts named in said checks," inasmuch as said instruction was a comment on the evidence and a charge on the weight of evidence.

6. ———: ———: ———: **No Issue or Evidence.** In a proceeding to contest a will, the trial court properly refused an instruction asked by plaintiff which contained a paragraph not warranted by either the pleadings or the evidence, particularly as the court gave for him an instruction very favorable to him, identical in language with the one refused, except that the objectionable paragraph was omitted, and the closing sentence was substantially the same.

Appeal from Clay Circuit Court.—*Hon. Ralph Hughes,* Judge.

AFFIRMED.

*Harris L. Moore* for appellants.

(1) The court erred in giving defendant's instruction numbered 1. This was the only instruction authorizing the jury to find a verdict for either party. The clause of the instruction permitting the jury to find for the plaintiff reads as follows: "If under the instructions given you find that the paper writing here produced is not a certified copy of the original writing and that the original was not the will of said Mary O. Dallas, then your verdict will be in this form." This amounted to a peremptory instruction to find against the plaintiff, because there was no contention in the case that the certified copy pro-

duced was not a certified copy of the original writing; in fact, it was conceded throughout that it was. Errors in instructions are presumed to be harmful. Fink v. Railroad, 161 Mo. App. 332; Jones v. Pub. Co., 240 Mo. 214. (2) The court erred in giving the second instruction asked by the defendant. This instruction entirely took from the jury the question of fraud on the part of Jeffords in securing the execution of the will. Instructions directing a verdict, but ignoring an issue in the case, are erroneous. Grady v. Ragar, 181 S. W. 428. (3) The court erred in refusing to give Instruction B asked by the plaintiff. There can be no question at all that this instruction correctly declares the law. The instruction was not a comment upon the evidence, because the construction of written instruments is for the court, and an instruction construing a written instrument is not a comment on the evidence. Bunting v. Allen, 18 N. J. L. 303; Klopfer v. Levi, 33 Mo. App. 322, 89 Atl. 740. The construction of a written instrument is for the court, and while it is held that where an instrument from which different inferences may be drawn is introduced to prove an extrinsic fact, the inference is for the jury; these cases do not mean that the court should not declare the legal effect of an unambiguous writing. Milstead v. Mtg. Co., 49 Mo. App. 191; State v. Patterson, 68 Me. 475; Primm v. Haren, 27 Mo. 205. (4) Instruction A requested by the plaintiff should have been given. It correctly declares the law of the case, and there is no other instruction covering the same ground.

*Craven & Bates* and *Claude Coppinger* for respondents.

(1) Instruction 1 was merely a direction to the jury on the form of the verdict, if they found certain facts to be true. There were two forms of verdict prepared by the court. The form of verdict described is proper on the conditions given in the premises. The

jury found the facts to be as given in the first condition, consequently the second form of verdict (the one complained of) had no application. The jury were directed to find for or against the will as they found the facts to be. (2) A mere charge of fraud without specification of the act or acts which constituted the alleged fraud amounts to nothing in pleading. Newman v. Trust Co., 189 Mo. 423; Nagal v. Railroad Co., 167 Mo. 96. (3) It is essential to state a cause of action based on fraud to aver that the representations alleged to have been made are false and so known to be by the defendant, that such representations were made with the intention of deceiving the party acting upon them and that she was deceived thereby and relying upon such representations she was induced to act. Remmers v. Remmers, 217 Mo. 557; Morrow v. Franklin, 233 S. W. 227. (4) Fraud will not be presumed, but must be clearly and distinctly proven by the person alleging it. Flood v. Busch, 165 Mo. App. 142; Link v. Jackson, 164 Mo. App. 195; Goss v. Evans, 244 Mo. 329, 340. (5) Facts constituting fraud must be pleaded in will cases the same as any other case involving fraud. Storey v. Storey, 188 Mo. 110. (6) Instruction B offered by plaintiff and refused by the court did not declare the legal effect of a written document, but declared its weight as a piece of evidence. It is, therefore, an erroneous instruction, because it is a comment on the testimony. Connelly v. Ry. Co., 120 Mo. App. 658; Oexner v. Loehr, 117 Mo. App. 698; Brouster v. Fox, 117 Mo. App. 711. (7) Instruction A offered by the plaintiff and refused by the court is erroneous, first, because it attempts to inject into the case the element of fraud and deceit which is not pleaded and is not an issue; second, because it is covered by Instruction 7· given on behalf of plaintiff.

ELDER, J.—This is an action to contest the validity of the will of Mary O. Dallas, who died in Washington, D. C., on May 5, 1918. Plaintiff is the half brother of deceased. Defendant Tracy L. Jeffords is executor of

the will of deceased and principal beneficiary thereunder. The remaining defendants are a half brother, a half sister, three nieces, a nephew and a cousin of the deceased. The grounds of contest were mental incapacity, fraud and undue influence. Upon the trial the issue of mental incapacity was abandoned. The verdict of the jury established the instrument in controversy as the last will of the deceased. From a judgment so holding plaintiff has appealed.

Mary O. Dallas, the testatrix, was a widow, who had been twice married. She at one time resided at Excelsior Springs, Missouri, but for several years before her death had lived in the city of Washington, D. C. Defendant Jeffords is a practicing attorney of Washington. According to his testimony he became acquainted with Mrs. Dallas in 1911 or 1912, through meeting her at a boarding house where they both roomed. In December, 1913, Mrs. Dallas rented an apartment, and Mr. Jeffords then began taking his evening meal with her, for which he paid her a dollar a day. Later one of Mrs. Dallas's nieces came to room and board with her, and defendant Jeffords aided the niece in securing a position. His relations with Mrs. Dallas were always friendly and occasionally he would spend the evening at her home. During the lifetime of her second husband she had lived in an aristocratic neighborhood and had had plenty of money. After his death she became somewhat financially embarrassed, having an income of but about $136 a year. She, however, owned some real estate in Excelsior Springs, worth from $6,000 to $7,000, which she was continually endeavoring to sell. Being in need of ready money she applied to defendant Jeffords, who from time to time loaned her various sums, which, by January, 1915, amounted to $1000 in the aggregate. About that time a settlement was effected, and Mrs. Dallas gave Mr. Jeffords a deed to one of the lots in Excelsior Springs, the same being valued at $2,000, but encumbered by a mortgage for $1000. Mrs. Dallas, however, continued to pay the taxes on the property and the interest on the mort-

gage. Mr. Jeffords testified that it was immaterial to him whether the conveyance was considered an outright deed or a mortgage. He said, "If I get my thousand dollars back and interest, I am willing to give back the property to anybody who pays the thousand dollars and interest, and to whom I ought to give it up. All I want is my money and the interest."

About the time of the above-mentioned settlement, Mrs. Dallas came to defendant Jeffords' office and handed him a written memorandum, in her own handwriting, of a will she requested him to put in legal form. Pursuant to such request Mr. Jeffords drew a will, conforming to the memorandum, dated January 25, 1915, under which he was bequeathed the sum of $1000 and made a residuary trustee as to all property not otherwise disposed of. He testified that he had had no previous conversation with Mrs. Dallas as to the terms of the said will, and that he did not directly or indirectly offer any suggestions with respect thereto. This will was introduced in evidence, but we do not deem it necessary to reproduce it.

After the delivery to defendant of the deed to the lot in Excelsior Springs, given in settlement of the $1000 then owing by Mrs. Dallas, defendant Jeffords continued to advance her a certain sum of money each month, payments being made by checks, which were introduced in evidence. The several amounts so advanced aggregated the sum of $2131.83. With respect to such advancements Mr. Jeffords testified: "After that date and after that settlement I continued to advance money to her from month to month. She made a calculation of about how much she would need and asked me to advance it each month." Part of the moneys so advanced was used in the payment of taxes, street improvements, and interest on mortgages affecting the Excelsior Springs property. The checks submitted in evidence usually ranged from $31 to $33 in odd amounts, such as $31.20, $32.62, $33.33, etc. Mr. Jeffords' explanation of this variation was that Mrs Dallas did not wish a Mr. Hood, who was secretary

and treasurer of the trust company where she did her banking business, and who was a cousin of her husband, to know that she was receiving the exact amount of her necessary expenses, as he would have known if she had, for instance, deposited a check for $33 one day and drawn a check for exactly the same amount the next day. One of the checks offered in evidence bearing date of November 6, 1915, was for $502.02, and, according to the testimony of defendant Jeffords, was given for the payment of special taxes against the Excelsior Springs property. Counsel for plaintiff endeavored to show that it was given as a consideration for the deed to the lot which Mrs. Dallas had executed in favor of Jeffords, but this the latter denied.

Defendant Jeffords testified that in February, 1918, Mrs. Dallas came to his office and handed him a memorandum in her own handwriting for another will (being the will in suit), which she requested that he put in proper form. This memorandum was as follows:

"To my cousin Irene Anna Babb MacDonald all my household effects.

"To the eldest daughter of my half brother, Paul Thomas Gittings, all my jewelry.

"To my dear friend and attorney, Tracy L. Jeffords, all my money in bank and all my real estate to pay him back the money he has loaned me in the past and what he may loan me in the future with ten per cent interest. If there be any money left after he is paid in full, to be divided between my cousin I. A. B. MacDonald and my nieces who may be alive at that time. My Liberty bonds are to pay my funeral expenses.

"16 Feby. 1918.

"MARY O. DALLAS."

"Q. Now, did you make any suggestions there? Were there any suggestions made there relative to that rough draft? A. I made one suggestion. Her rough draft contains the language ten per cent interest, and I suggested that she change it to legal interest and she said she wished that change made, and it was made.

"Q. Now, with that draft, what did you do? A. I prepared or dictated, or had prepared, or caused to be prepared, the will which is in evidence here, a copy of which is in evidence here, and which has been probated in Washington."

The final draft of the will in suit, as submitted in evidence, omitting the attesting clause of witnesses, is as follows:

"I, Mary O. Dallas of Washington, D. C., do now make this my last will as follows:

"I hereby revoke all wills by me heretofore made.

"I give all my household effects to my cousin Irene Anna Babb MacDonald, and all my jewelry to the eldest daughter of my half brother Paul Thomas Gittings.

"It is my wish that my Liberty bonds be used to pay my funeral expenses.

"All the rest, residue, and remainder of all my money, property and estate including all hereafter acquired, I give, devise, and bequeath in fee simple, absolutely and forever to my friend and attorney, Tracy L. Jeffords, to pay him back money he has loaned and advanced to me in the past and may loan me hereafter, together with legal interest on same, and to that end I hereby direct that all my property and estate be sold and turned into money as soon after my death as my executor shall in his discretion determine, and he is hereby directed and empowered to make such sale and to convey said real estate by good and sufficient deed to any purchaser.

"And after paying back all said money so loaned to me and all interest on it, if there be any left, I give it to my cousin Irene Anna Babb MacDonald and all my nieces then living, to be divided among them equally, share and share alike.

"I make, constitute and appoint Tracy L. Jeffords executor of this will and my estate.

"In testimony whereof I have hereunto signed my name and affixed my seal at Washington, D. C., February 18, 1918.

"MARY O. DALLAS."

Further testifying defendant Jeffords stated:

"Q. Now, you say she brought in a memorandum for you to draw the will by? A. Yes, sir.

"Q. As introduced in evidence. What, if anything, had you said to her about that memorandum prior to the drawing of the will? A. I had never said anything to her about any particular memorandum. She had talked about a will.

"Q. What, if anything, did you say to her about how she should draw the will? A. Not a word.

"Q. Did you discuss with her how she should distribute her property? A. I did not.

"Q. Do you think that when she drew the will in 1918, February 18th, from your acquaintance with her, whether Mrs. Dallas comprehended and was of sufficient mind to comprehend who her relatives were at that time? A. She had sufficient mind. She had as much mind as she ever had when I knew her.

"Q. Well, at that time, February 18th, from your acquaintance with her and from what you knew of her, would you say her mind was sound or unsound? A. It was sound as anybody's mind. . . .

"Q. Do you remember what personal property she had at the time of her death? A. She had a little furniture, enough to furnish a small apartment, and she had $200 in Liberty bonds, and one hundred and eighty some dollars in the bank, and some jewelry and a few dollars in the house, I presume.

"Q. About $10? A. About $10. A record has been made and the inventory shows the amount of money in the house and in the bank.

"Q. Now, Mr. Jeffords, I will ask you this question, whether prior to making this will in question, whether you, directly or indirectly, used any influence over Mrs. Dallas to get her to make this will? A. I did not use any influence of any kind, directly or indirectly, to cause her to make this will, or any will. . . .

"Q. And then you drew this will of 1918 and you say you had no previous discussion with her about that

will? A. I had none about that particular will and, of course, I didn't draw the will. She drew the will, I put it in shape for her.

"Q. She drew that will again and what did she say about that will? A. She said that that was the will she wanted made. She had made up her mind about what she wanted to do.

"Q. In that case did she walk down to your office as in the other case, and hand it to you at your office? A. Exactly.

"Q. She didn't give it to you at the house? A. No. . . .

"Q. But hadn't you discussed that? A. We discussed it frequently.

"Q. And you knew she was going to make a will? A. I knew she said she was.

"Q. Didn't she tell you anything about it when she was writing out this memorandum? A. Not a word. The first knowledge I had of any kind, or the first intimation I had of any kind about what she was going to put in that will, was when she brought it to me.

"Q. And all that language and that memorandum, then, that you have introduced, those ideas originated wholly with her? A. I have no idea where they originated, but they did not originate with me.

"Q. You never suggested them at all? A. No, sir; never knew anything about them.

"Q. Just the same as you didn't suggest the thousand-dollar gift in the other will? A. No, sir."

The will in question was witnessed by the law partner of Mr. Jeffords, by his stenographer and by a gentleman who officed with him, and was kept by Jeffords in his safe until the death of Mrs. Dallas, whereupon it was probated in the Supreme Court of the District of Columbia, and a certified copy thereof was filed for record in the office of the Recorder of Deeds for Clay County, Missouri.

The three witnesses to the will testified that Mrs. Dallas was of sound mind when she executed the will, as did three other witnesses,

Irene A. Bohlin, a first cousin of Mrs. Dallas, and one of the defendants herein, testified that she lived with Mrs. Dallas and saw her every day up to the time of her death; that when she executed the will in suit she had sufficient mind to comprehend who her relatives were, to understand the nature and extent of her property, and to understand to whom she desired to give her property.

"Q. Now, what, if anything, have you heard her say about giving any of her property by her will to any of her relatives? A. Do you want me to tell what she said about her will?

"Q. Yes. A. A few days before she made her will —no, I made a mistake; it was after she made her will she told me that she had made her will and that she had borrowed money from Mr. Jeffords. She had borrowed, beginning December, 1915, she borrowed $1000, and up to December, 1917, she had borrowed the rest in small amounts, amounting to about $2000, and that he had no security except his checks and her property, and that she left me some, she didn't mention how much, and her nieces, and that was all she said.

"Q. Did she say anything about what provisions she had made in her will as to paying her indebtedness to Mr. Jeffords? A. She said that she mentioned that she was indebted to him.

"Q. Had mentioned in her will? A. In her will.

"Q. What, if anything, did she say about her half-brother, Paul? A. At that time she said nothing.

"Q. Did she at any time? A. At one time she told me that she had given him his share of her estate just as if he had been her own son, and that she had fixed it legally so that he could never cause any more trouble."

The plaintiff was the only witness in his behalf. He testified that he was a half brother of Mrs. Dallas; that he "had been raised as the son of Mary O. Gittings and Samuel R. Gittings and did not know that he was not their natural son until he was of age;" that his relations with Mrs. Dallas had always been friendly, but that he

had not seen her often since she had left Excelsior Springs.

The foregoing sufficiently outlines the case made. Matters necessary to a consideration of the errors assigned will be noticed in the course of the opinion.

I. Plaintiff contends that the court erred in giving defendants' instruction numbered 1. Said instruction is as follows:

"The issue submitted to you in this proceeding is this:

"Is the paper writing dated February 18, 1918, alleged to be signed by Mary O. Dallas, a certified copy of which is offered in evidence, the last will and testament of the said Mary O. Dallas, deceased?

"If under the instructions given you find from the evidence that said paper writing here produced is a certified copy of the original, and that the original writing is the will of Mary O. Dallas, deceased, you will return your verdict in this form:

"'We, the jury, find that the paper writing produced and read in evidence, dated February 18, 1918, is a certified copy of the original writing, and that the original is the will of Mary O. Dallas, deceased.'

"If under the instructions given you find that the paper writing here produced is not a certified copy of the original writing, and that the original was not the will of the said Mary O. Dallas, deceased, your verdict will be in this form:

"'We, the jury, find that the paper writing produced and read in evidence as being a certified copy of the original will of Mary O. Dallas, deceased, dated February 18, 1918, is not the will of said deceased.'"

Plaintiff argues that the paragraph of said instruction which permits the jury to find for plaintiff amounts to a peremptory instruction to find against him "because there was no contention in the case that the certified copy produced was not a certified copy of the original writing." This insistence cannot be sustained. While the

292 Mo.—44

instruction was largely directory as to the form of verdict to be returned, nevertheless, by the opening clause the issue submitted was defined to be whether the paper writing, a certified copy of which was introduced in evidence, was the last will and testament of Mary O. Dallas. This issue was carried through the entire instruction. By the second paragraph the jury were instructed that if they found that the original writing was the will of Mrs. Dallas, they should return a verdict accordingly. Such a verdict would have been in favor of defendants. By the next paragraph (the paragraph complained of), the jury were instructed that if they found that the original writing was not the will of Mrs. Dallas, they should return a verdict to that effect. Such a verdict would have been in favor of plaintiff. The jury were in effect given the option of finding for or against the validity of will, which was the sole issue in the case, according to the facts. As a matter of fact they found that the paper offered in evidence was a certified copy of the original writing and that the original was the will of Mrs. Dallas. They were not, however, precluded by the instruction from finding to the contrary. And the direction that if they found that the writing was not a certified copy of the original did not amount to a peremptory order to find that the original writing was the will of Mrs. Dallas, which the jury were obliged to find in order to find against plaintiff.

The point is without merit and is ruled against plaintiff.

II. Plaintiff urges that the court erred in giving instruction numbered 2, requested by defendants. Said instruction is as follows:

"If the jury believes from the evidence that the instrument of writing read to the jury is a certified copy of the original writing purporting to have been executed on the 18th day of February, 1918, was signed by Mary O. Dallas as her last will in the presence of two or more witnesses, and that the witnesses subscribed their names

to said instrument in her presence and at her request; that she was eighteen years of age or older, and that the testatrix at the time had the capacity of understanding the business she was engaged in in regard to the disposition of her property, the object of her regard, and the persons to whom she meant to convey it, and the manner in which she meant to distribute it, and was without any undue influence operating upon her at the time depriving her of her free will and desire in disposing of her property according as she desired; the jury will find for the will.''

Plaintiff argues that this instruction ''entirely took from the jury the question of fraud on the part of Jeffords in securing the execution of the will.''

In order to properly state a cause of action based on fraud, the rule is that it is essential that the petition allege that the representations made were false and known to be so by the defendant, that the representations were made with the intention of deceiving plaintiff, that he was deceived thereby, and that relying upon such representations he was induced to act to his injury. [Remmers v. Remmers, 217 Mo. l. c. 557.] And a mere charge of fraud, without specification of the act or acts constituting the same, is insufficient. [Nagel v. Lindell Ry. Co., 167 Mo. l. c. 96; Bank v. Rohrer, 138 Mo. l. c. 380; Goodson v. Goodson, 140 Mo. l. c. 218; Hoester v. Sammelmann, 101 Mo. l. c. 624.]

A further rule is that fraud will not be presumed, but must be proven, and the burden of proof rests upon him who asserts it. [Gass v. Evans, 244 Mo. l. c. 340; Hardwicke v. Hamilton, 121 Mo. l. c. 473; Flood v. Busch, 165 Mo. App. 142.] This rule applies to a suit to contest a will the same as any other proceeding involving fraud. And if the fraud is identified by a specification the pleader is held to the precise specification pleaded. [Story v. Story, 188 Mo. l. c. 118, 119; Link v. Jackson, 164 Mo. App. l. c. 201.]

In the case at bar the fraud alleged is thus pleaded in the petition:

"That the making and signing of said instrument was procured . . . by the fraud of the said Tracy L. Jeffords in procuring the said Mary O. Dallas to execute a will giving to him, the said Tracy L. Jeffords, the power to pay himself large unliquidated and undefined debts, alleged to be due him out of her estate, which the said Tracy L. Jeffords alleged and claimed to amount to $2500 or $3500, but which did not in fact, amount to more than $500."

Applying to this allegation the principles enunciated in the cases above cited, it will be observed that nowhere is it asserted that defendant Jeffords knew that the debts claimed by him to amount to $2500 or $3500 did not amount to more than $500, nor is it alleged that the power of payment given to him was procured with the intention of deceiving the testatrix, nor is it stated that she was deceived thereby, nor is it asserted that she was induced to act to plaintiff's injury. Furthermore, the charge does not declare that the fraud complained of was an inducement to the making of the will or that the testatrix had in any way been misled thereby. We are therefore of the opinion that the fraud charged was not properly pleaded.

Again, even though it be contended that the fraud was sufficiently pleaded, the evidence in support thereof is lacking. With respect to the knowledge Mrs. Dallas had of the amount owing defendant Jeffords at the time the will was executed, Mr. Jeffords testified as follows:

"Q. And about the time she drew that will, she asked you how much she owed you? A. Yes.

"Q. What did you tell her? A. I told her I would look and see.

"Q. But you didn't look and see? A. Yes.

"Q. Did you explain it to her? A. Yes.

"Q. What did you tell her how much she owed you? A. I have forgotten. I don't remember what month it was. I told her exactly what these checks show.

"Q. You added them up to that time? A. She either handled the checks or we added them together, I don't remember.

"Q. She added the checks before? A. She saw the checks, but she knew they were kept for the purpose of keeping this account."

Moreover, Mrs. Bohlin testified that the testatrix had told her after the execution of the will that she had borrowed about $3000 in all from Mr. Jeffords and that she had "mentioned that she was indebted to him in her will." The testimony of neither of these witnesses was controverted. And as all the evidence showed that Mr. Jeffords had up to about January, 1915, advanced Mrs. Dallas $1000, and after that time $2131.83, and that she was cognizant of such advancements, the allegation in the petition that power was given Jeffords "to pay himself large undefined debts . . . which did not in fact amount to more than $500," falls far short of having been proven.

Plaintiff's claim of error is therefore disallowed.

III. Plaintiff claims that the court erred in refusing to give Instruction "B" requested by him. Said instruction is as follows:

"You are instructed that the checks introduced in evidence, given by Tracy L. Jeffords to Mary O. Dallas and indorsed by her, are not in themselves sufficient evidence that the said Mary O. Dallas was indebted to said Tracy L. Jeffords in any sum whatever. The checks are merely proof that the said Tracy L. Jeffords paid to said Mary O. Dallas the amounts named in said checks."

Counsel for plaintiff contends that this instruction declares the legal effect of a written instrument and does not constitute a comment on the evidence. An examination thereof, however, shows that it is an expression of opinion upon the insufficiency of the checks as evidence of an indebtedness of Mrs. Dallas to defendant Jeffords, and of the force and effect of such checks. Clearly the instruction was a charge on the weight of evidence. As such it was error and was properly refused. [Schneer v. Lemp, 17 Mo. 142; Chouquette v. Barada, 28 Mo. 491; Connelly v. Railroad, 120 Mo. App. 652; Brouster v. Fox, 117 Mo. App. l. c. 729, 730; Oexner v. Loehr, 117

Mo. App. l. c. 704, 705; 38 Cyc. 1646; Respass v. Young, 11 Ga. 114.] As said in Primm v. Haren, 27 Mo. 205, l. c. 211, cited by plaintiff:

"The legal effect of papers is to be determined by the court, but when documents are offered in evidence as the foundation of an inference of fact, whether such inference can be drawn from them is a question for the jury. The most authentic documents, when offered for such a purpose, become no more than mere letters or a written correspondence, which, when offered in evidence to prove a fact, are always to be interpreted by the jury."

IV. Plaintiff finally contends that the court erred in refusing to give Instruction "A" requested by him Said instruction is as follows:

"If you find and believe from the evidence that Tracy L. Jeffords was the attorney and confidential legal adviser of the deceased, Mary O. Dallas, and as such attorney prepared and drew for her the will in question, then in that case it was the duty of the said Tracy L. Jeffords to fully and truthfully advise his client on the laws concerning the will he was preparing for her.

"The effect of the said will of Mary O. Dallas and of the power of sale of all of her real estate therein, given to Tracy L. Jeffords, is, that said power of sale permits the said Tracy L. Jeffords, to sell the Missouri real estate of the deceased, and take the proceeds thereof into the administration of said estate, in Washington, D. C., and does away with the necessity of the said Tracy L. Jeffords having any claim that he may have against the estate of Mary O. Dallas allowed in the usual way in the probate courts of this State, and permits him to transfer the whole of the proceeds of said real estate to the administration in Maryland, and use the same to reimburse himself for any advances that he made or claimed to have made before he makes distribution of the remainder of such money, if any.

"If, therefore, you believe from the evidence that said Tracy L. Jeffords did not inform Mary O. Dallas

at the time he was drawing the said will for her of the effect of said clause in said will leaving to him all of her real and personal property, and giving him a power of sale thereof, but procured her to make said will with the intent and design of retaining from the proceeds of the sale of the said real estate, a larger amount than he was actually entitled to, or could have been allowed in the usual way, as a claim against her estate, and that the said Mary O. Dallas did not know and understand the effect of the provisions of said will on that matter, then and in that case you will find that said will was procured by fraud and undue influence of the said Tracy L. Jeffords. And your verdict should be for the plaintiff.''

The only argument advanced by counsel for plaintiff in support of the error assigned is that this instruction ''correctly declares the law of the case and there is no other instruction covering the same ground.''

A scrutiny of the record discloses that instruction numbered 7, given on behalf of plaintiff and very favorable to him, is *identical* in language with Instruction ''A'' above set forth, with the exceptions (1) that the second paragraph of Instruction ''A'' is omitted therefrom; (2) that the closing sentence of Instruction 7 reads ''then and in that case the law presumes that said will was procured by fraud and undue influence of the said Tracy L. Jeffords, and unless said presumption is rebutted by a preponderance of the evidence you will find that said will is not the last will of Mary O. Dallas.''

The second paragraph of Instruction ''A'' is but a naked announcement wholly unconnected with the issue involved. It was not warranted by either the pleadings or the evidence and hence was improper. [Camp v. Heelan, 43 Mo. 591.] The instruction was properly refused.

Having disposed of each of the points raised by plaintiff, and finding nothing in the record calling for interference, it follows that the judgment should be affirmed. It is so ordered. All concur.