DR. J. A. GRAY, Administrator with the Will Annexed, of the Estate of JAMES M. CARDER, acting as such Administrator and Individually, and ELIZA B. CARDER, v. RICHARD CARDER, Appellant, THE PRUDENTIAL LIFE INSURANCE COMPANY OF AMERICA, a Corporation, Defendant.—151 S. W. (2d) 1112.

Division Two, June 10, 1941.

*Gerlash & Gerlash* and *Henry B. Hunt* for Richard Carder.

1048

*J. V. Gaddy* and *Clayton W. Allen* for respondents.

TIPTON, P. J.—The Circuit Court of Atchison County, Missouri, entered a decree cancelling a quitclaim deed executed by respondent, Eliza B. Carder, and her deceased husband, James M. Carder, conveying a farm located in Atchison County to appellant, Richard Carder, who will hereafter be referred to as the appellant, as the action against the defendant, Prudential Life Insurance Company, was dismissed before trial. From that decree the appellant has duly appealed.

This is an equity case and triable *de novo* in this court. After carefully weighing the evidence, we find the facts to be as follows: The quitclaim deed in question was executed January 3, 1938. At that time the deceased, James M. Carder, and respondent, Eliza B. Carder, were husband and wife, living in Watson, Missouri. The deceased was about seventy-seven years of age, and owned the farm in controversy. He could neither read nor write. The appellant, a nephew of the deceased, lived on the farm and had transacted all of deceased's business for about two years prior to the execution of the deed in question. He read to the decedent all papers and documents necessary to be executed or acted upon by him, and in the transaction of his business wrote checks on the bank account of his uncle, the deceased. In short, he acted as confidential agent for deceased. The deceased, during the last few years of his life, suffered from tuberculosis of the kidney, which disease caused a toxic condition to develop in his system. We think that both before and after the date of the execution of the deed in question, he would know right from wrong, but he did not have a strong mind and was gullible and easily influenced. The decedent understood simple business matters if they were thoroughly explained to him, however, as previously stated, he could not read or write and signed his name by a mark.

The respondent, Eliza Carder, was one year older than the deceased. She could read and write, however, because of cataracts on her eyes she could not see to read. Dr. J. M. Dunsmore testified she was suffering a nervous breakdown, without a disease of mind; her eyes bothered her from cataracts; she was very frail and weak, and that, in his opinion, her affections and surroundings would sway her, even though she was treated fairly and honestly by those who were transacting business with her.

At the same time the quitclaim deed was executed, the deceased and respondent executed a deed of trust on the land in question to the Prudential Life Insurance Company, securing a note for $6,000. The facts leading to the execution of these instruments are as follows: Ella M. Weir held a note secured by a deed of trust on the land in question, which was due in December, 1937; she desired the money for another investment, therefore an application for a loan was made

to the Prudential Life Insurance Company by deceased and appellant. The appellant was informed by the inspector for the insurance company, that as deceased and respondent were over sixty-five years of age a cosigner would be necessary, and appellant agreed to sign the note, stating, "Well, I'll sign the note." He did not tell the loan inspector that he would require the quitclaim deed, in fact, the inspector testified he did not know such a deed was executed until after the institution of this suit. There is nothing in the record to indicate the requirement of a cosigner by the insurance company was ever communicated to this old couple.

James Kelley, the agent for the insurance company, his daughter, Lois Kelley, and William F. Harmes, a Notary Public, went to the Carder home in Watson, on January 1, 1938, after the application for the loan was approved, for the purpose of having the deed of trust and note executed. They decided it was best not to have these papers executed, since that was a legal holiday, and on January 3, 1938, these three persons, with appellant, returned to the Carder home and on the way the appellant gave the quitclaim deed in question to James Kelley. They informed the Carders, upon their arrival, that they had come to close the loan. Kelley, Harmes and the appellant testified that Harmes read the note and the quitclaim deed to the Carders, and explained the deed of trust was in the usual form, after which the Carders signed the quitclaim deed, the note, and deed of trust, at the places indicated. They testified there were no objections made by the Carders. There is not one word of evidence that the quitclaim deed was explained to them, in fact, the mere reading of this deed, without any objections, is all that is claimed by the appellant.

The respondent, Eliza Carder, testified that the quitclaim deed was not read to her, that she did not know she had executed it, and did not know there was a quitclaim deed, until about two weeks after her husband's death, in August, 1939. She testified she thought that all she was signing were the loan papers. The quitclaim deed was not recorded until some time in February, 1938. The check for the loan was delivered to the decedent while he was in the hospital, the last of January, 1938, but there is not a word in the evidence with reference to the quitclaim deed at that time.

The trial court found that the appellant was the confidential agent and adviser of the grantors, and that the execution of the deed in question was obtained by fraud and undue influence exerted by appellant over the grantors. Other essential facts will be stated in the course of the opinion.

We think the weight of the evidence sustains the decree of the trial court. If it had not been for the fraud and undue influence exercised by the appellant over the grantors, on account of the con-

fidential relationship which existed between them, the quitclaim deed would never have been executed.

The appellant contends that before respondents can recover they must sustain the burden of proof and show that he made false representations, known by him to be false; that the representations were made with the intention of deceiving the grantors, and that they were deceived thereby, and that relying upon such representations they (the grantors) were induced to act to their injury. We think this a correct statement of the law. [Gittings v. Jeffords, 292 Mo. 678, 239 S. W. 84; Gockel v. Gockel (Mo.), 66 S. W. (2d) 867.]

The respondents have sustained the burden of proof as announced by the above rule of law. In the first place, the appellant was the confidential agent of the decedent. Appellant transacted all of deceased's business; he wrote checks on deceased's bank account. He knew the deceased could neither read nor write, was feeble and his mind impaired, and that both the grantors could understand only simple business transactions, which were required to be fully explained. He knew that the grantors of this deed relied upon what he told them, yet, with that knowledge, he did not tell them they were executing a quitclaim deed, but on the contrary, these grantors were led to believe they were executing only the papers necessary to close the loan. There is not a word in the evidence showing the question of this quitclaim deed had ever been discussed between these grantors and the appellant. Assuming it to be true that the quitclaim deed was read to them with other papers, it is no wonder that respondent, Eliza Carder, testified she did not execute the deed, or that she knew anything about it until after her husband's death. No one ever heard of the quitclaim deed until the appellant handed it to James Kelley on the trip to grantors' home. If there was any conversation between Kelley and appellant at this time with reference to this deed, the record fails to disclose it. The appellant does not contend that the grantors understood they were executing a quitclaim deed along with the loan papers, but merely rests his case on the fact they made no complaint after it was read to them. Under the circumstances, the appellant's conduct was an act of fraud; these grantors were led to believe by his actions and words that when he and Kelley arrived at their home, they came only to close the loan. There is not a word of evidence that appellant ever claimed to be the owner of this farm during the lifetime of his uncle, the deceased. We think the evidence of appellant's conduct, coupled with the confidential relationship he bore the grantors, conclusively shows the quitclaim deed was obtained by fraud.

The appellant also contends the petition does not state facts to constitute a cause of action in favor of Dr. J. A. Gray, as administrator, because there is no allegation that there was an order of the probate court authorizing such a suit.

1052

This is an equity action, the decree granted no relief to the administrator. It simply cancelled the quitclaim deed, thereby resting the title to the land in question in the legatees of the deceased, James M. Carder. Assuming appellant's contention is correct, the decree was based on the petition of respondent, Eliza Carder, and was for the right party. It should be affirmed. It is so ordered. All concur.