| 30 | 237 |
| 104 | 646 |

# SAXON AND WIFE vs. WHITAKER'S EXECUTOR.

[CONTEST RESPECTING VALIDITY OF WILL.]

1. *Burden of proof as to insanity.*—When the validity of a will is contested on the ground of the testator's mental incapacity, the burden of proof is, in the first instance, on the contestant; but, when lunacy has been once established, it then devolves on the proponent to show that the will was executed during a lucid interval; and he cannot again shift the *onus*, by proving merely that the testator "had lucid intervals on the morning of and before" the execution of the will.

APPEAL from the Probate Court of Coosa.

IN the matter of the last will and testament of Wiggins W. Whitaker, deceased, which was propounded for probate by the executor therein named, and contested by the appellants, (Mrs. Saxon being a daughter of the testator,) on the grounds of mental incapacity and undue influence. During the progress of the trial, the contestants reserved several exceptions to the rulings of the court on the admissibility of evidence; but the opinion of the court renders it unnecessary to state the facts bearing on these points. The court charged the jury, "that if they believed from the testimony that the deceased had reasoning capacity, or had lucid intervals, on the morning of and before the execution of the instrument in writing, then it is necessary for the contestants to prove that he was not in a lucid state at the time of executing said instrument." The contestants excepted to this charge, also, and they now assign it as error.

JNO. A. ELMORE, and E. Y. FAIR, for appellants.

GOLDTHWAITE & SEMPLE, contra.

RICE, C. J.—The testator must be of sound mind at the time of making his will. That is the true time to try his mind. If his will is contested on the allegation that he was of unsound mind when he made it, the burden of proof rests, in the first instance, upon the party alleging the insanity; because the law presumes every man to be sane, till the contrary is shown. But, when his lunacy has been established, and it is alleged that, after its existence, and in a lucid interval, he made his will, "the burden of proof attaches to the party alleging such lucid interval, who must show sanity and competency *at the particular period*" when the will was made.—3 Starkie on Ev. (edition of 1826,) 1702; Worthington on Wills, 25; Kinloch v. Palmer, 1 Const. Rep. (So. Ca.) 225; Spencer v. Moore, 4 Call's Rep. 423; Hix v. Whittemore, 4 Metc. R. 545; Jackson v. Van Dusen, 5 Johns. 159; Harrison v. Rowan, 3 Wash. C. C. Rep. 586.

After the burden of proof is thus cast upon the party propounding the will for probate, he cannot shift it by proving merely that the testator "had lucid intervals on the morning of and before" the execution of the will. It is incumbent on him to prove the existence of a lucid interval at the very time the will was executed. For, although it may have existed shortly before the execution of the will, its duration or continuance is too uncertain to be matter of legal presumption. The length of a lucid interval is not a question of law, but a pure question of fact. Lunacy is usual or habitual insanity, with occasional clear or calm intermissions of the disorder. A lunatic is a person usually mad, but having intervals of reason. Lucid intervals are the clear or calm intermissions of the habitual insanity,—the mere *temporary* cessations of the malady,—the spaces between the periods of its control and mastery of the mind. To say of a man that he has lucid intervals, is, in legal contemplation, equivalent to saying that he is habitually insane, but enjoys intervals of reason. The legal implication from the fact that he has lucid intervals, is, that he is not cured of his lunacy. As a lucid interval is temporary in its nature, and uncertain in its duration, *the law* will not presume its continuance for a month, a day, or an hour. After the lunacy of the testator has been once established, the mere proof of a subsequent lucid interval does not shift the burden of proof. If it did, the consequence would be, that the burden of proof might be shifted twenty times in the course of the trial, by proof of twenty lucid intervals, all of which may have occurred *before* the will was made; and thus there would be a practical abrogation of the fixed rule, that when lunacy is once established, the law presumes its continuance until it is shown to have been cured; and that, although a will made by the lunatic *during a lucid interval* may be valid, yet it is incumbent on the party propounding such will to prove that it was in fact made *during such lucid interval.*—1. Wms. on Ex'rs, 17–22; Cartwright v. Cartwright, 1 Phill. 90; 1 Jarman on Wills, 56, 65, *et seq.;* Worthington on Wills, 25; Groom v. Thomas, 2 Hagg. 433; Attorney-General v. Parnther, 3 Bro. C. C. 441;

Hall v. Warren, 9 Ves. 611; Boyd v. Eby, 8 Watts, 66; Halley v. Webster, 21 Maine, 463.

Two distinct propositions are asserted in the charge of the court. The first is, that if the deceased had "reasoning capacity" "on the morning of and before" the executing of the instrument in writing, then it is necessary for the contestants to prove that he was not in a lucid state at the time of executing said instrument." The second is, that if the deceased "had *lucid intervals* on the *morning of and before* the executing of the instrument in writing, then it is *necessary for the contestants to prove* that he was not in a *lucid state at the time of executing* said instrument."

The second proposition is erroneous on its face; for it proceeds on the concession, that the lunacy of the testator had been proved. The use of the words "lucid intervals" in that charge, amounts to a concession that the testator was a lunatic. If he was not, those words ought not to have been used. The first proposition might not furnish ground for reversal, if there had been no evidence of lunacy or habitual insanity. We do not say whether the evidence was or was not sufficient to establish such insanity. That is a question for the jury. But we cannot say there is no evidence tending to prove such insanity. And therefore we pronounce the first proposition erroneous.

The counsel for the appellant has abandoned all his assignments of error except that relating to the charge. We do not notice the matters thus abandoned. For the error in the charge of the court, the judgment is reversed, and the cause remanded.