(No. 12485.—Decree affirmed.)

ANGELINE FARMER *et al.* Plaintiffs in Error, *vs.* ADDA JANE DAVIS *et al.* Defendants in Error.

*Opinion filed October 27, 1919.*

1. WILLS—*what does not tend to prove undue influence.* The mere fact that the testatrix, when the will was made, was at the home of her niece, who was made principal beneficiary, does not, alone, tend to prove the charge of undue influence of the beneficiary.

2. SAME—*what undue influence will invalidate a will.* Undue influence that will invalidate a will must be of such character as to deprive the testator of free agency, must be directly connected with the execution of the instrument and be operating at the time it is made, producing a perversion of the mind that made the will.

3. SAME—*prejudice against relatives does not amount to insane delusion.* An insane delusion is a belief in something impossible under the circumstances and which refuses to yield either to evidence or reason; and the fact that a person making his will distributes his property unequally among the natural objects of his bounty because of prejudice or unfriendliness towards some and affection for others does not establish that he labored under an insane delusion toward relatives for whom little or no provision is made.

4. SAME—*age, sickness or debility will not, alone, affect capacity to make will.* Neither age, sickness nor debility of body will affect the capacity to make a will if sufficient intelligence remains.

5. SAME—*when decree will not be reversed because of inaccuracies in instructions.* Courts of review reverse for only such errors as may have been prejudicial to the party complaining, and in a will contest case where there is no reason to believe a different verdict and decree might have resulted if none of the instructions complained of had been given, and where the evidence warrants the verdict, the decree will not be reversed for inaccuracies in instructions.

WRIT OF ERROR to the Circuit Court of Moultrie county; the Hon. GEORGE A. SENTEL, Judge, presiding.

REDMON, HOGAN & REDMON, C. R. PATTERSON, and E. J. MILLER, for plaintiffs in error.

JENNINGS & ELDER, EDWARD C. CRAIG, DONALD B. CRAIG, and JAMES W. CRAIG, JR., for defendants in error Adda Jane Davis and C. S. Edwards, Admr.

ALBERT M. ROSE, for defendant in error Sarah J. Elzy.

Mr. JUSTICE FARMER delivered the opinion of the court:

This writ of error was sued out to review a decree of the circuit court of Moultrie county sustaining the validity of the will of Jane Freeman Spaugh, who died testate March 24, 1916. After the will was admitted to probate the bill to contest it was filed by the two sisters of the testatrix, Angeline Farmer and Mary Ann Jones, and Joseph T. Steele, a nephew. The only other heirs-at-law of the testatrix, Adda Jane Davis, a niece, Edward W. Steele, a nephew, and Sarah J. Elzy, a niece, were made defendants. Before the trial Mary Ann Jones died testate, leaving her husband, Amos Jones, sole devisee and legatee. An amended bill was filed, in which Amos Jones, in his individual capacity and as executor of the will of Mary Ann Jones, was made a defendant. The bill alleged the testatrix did not possess testamentary capacity, that the will was the result of an insane delusion, and that it was procured through the undue influence of Adda Jane Davis, the principal legatee.

The will was executed June 28, 1915. The testatrix was about eighty years old and was confined to her bed at the home of Mrs. Davis at the time. The will was prepared by two members of the Moultrie county bar, who went to the home of Mrs. Davis pursuant to information from Mrs. Davis' husband that Mrs. Spaugh wanted to see them. Both of them signed as attesting witnesses. The testatrix

had real and personal property of the value of $12,000 or $15,000. By her will she bequeathed $25 to each of her two sisters and $1000 to Mrs. Davis. The fifth clause of the will directed that after the payment of these bequests and the debts the remainder of testatrix's personal property be equally divided between her two nieces, Mrs. Davis and Sarah J. Elzy. By the sixth clause she devised all of her real estate to Mrs. Davis, "upon condition that the said Adda Jane Davis shall furnish me with a comfortable home from this date until my death and shall also give me suitable care and such attention as my declining health requires, and this bequest is also made in full payment of all services heretofore rendered to me by my said niece, Adda Jane Davis." The only real estate the testatrix had title to at the time the will was executed was a ten-acre tract of farm land occupied by Cloyd Freeman, her step-grandson, as tenant, which was worth $3000 or $4000. Mrs. Spaugh had foreclosed a mortgage on a lot in Kirksville, on which there was a building, and had bought the property at the sale. The period of redemption had not expired when the will was executed but it did expire before her death and she received a master's deed for the property, which was worth about $500 or $600.

The issues of fact submitted to the jury were: (1) Was the writing offered in evidence the last will and testament of Jane Freeman Spaugh? (2) Was she at the time of its execution of sound mind and memory? (3) Was she under the improper restraint and undue influence of Adda Jane Davis? (4) Was she acting under an insane delusion toward Mary Ann Jones to such an extent that she was thereby rendered incompetent to make a just and proper distribution of her estate? The jury found for the proponents on all the issues, and the court, after overruling a motion to set aside the verdict and grant a new trial, entered a decree sustaining the validity of the will. A written motion for a new trial was filed by contestants, specify-

ing eleven grounds in the motion, among them the admission
of improper and the rejection of proper evidence, giving
improper and refusing proper instructions, giving too many
instructions for proponents, that the verdict was contrary
to the evidence and contrary to law.   Six errors are as-
signed on the record, only three of which are argued in
contestants' brief.   They are, that the court erred in giving
too many instructions for proponents, that the court gave
erroneous instructions for proponents, and that the court
erred in entering a decree contrary to law.

   The sixth error assigned is that the decree is contrary
to the law and evidence, but counsel for contestants say in
their brief that the evidence on the issues was sharply con-
flicting, and the errors in instructions, in the opinion of
counsel, are so palpable and grave that their brief will be
devoted to a discussion of "errors of law committed by
the court."   Counsel in effect concede that the state of the
evidence is such that a court of review could not reverse
the decree on the ground that the verdict was contrary to
the evidence, but claim that the testimony being conflicting,
contestants were prejudiced by the court's action in giving
erroneous instructions for proponents.   Proponents insist
that by not assigning as error the action of the court deny-
ing the motion to set aside the verdict and granting a new
trial contestants admit the verdict was right under the evi-
dence, that the court properly overruled the motion for a
new trial, and that no question of the weight of evidence
is presented for our consideration.   Being unwilling to dis-
pose of the case upon that proposition alone, which appears
to be supported by authority, without investigating the mer-
its of the case, we have examined the evidence and the in-
structions and have arrived at the conclusion that on the
merits the decree must be affirmed.   While there is some
conflict in the testimony, we do not regard it as close on
any of the issues tried.   We are convinced the verdict was
amply supported by the weight of the testimony, and it is

not claimed that any improper or incompetent evidence was admitted or that proper and competent testimony was rejected. There was scarcely a scintilla of evidence to support the charge of insane delusion or undue influence, and the weight of the testimony was that the testatrix possessed testamentary capacity.

We shall not attempt a full statement of the evidence. The will was executed June 28, 1915. Mrs. Spaugh was about eighty years old and died March 24, 1916. She had been married four times but had no children. Two of her husbands died and she was divorced from two. For more than twenty years prior to 1915 she and Mollie Powell, a girl she raised from the time she was seven years old, lived together. In January, 1915, they had a quarrel and testatrix went to the home of her sister Mary Ann Jones. While there a proceeding was begun, as we understand it, by the husband of Mrs. Jones for the appointment of a conservator for Mrs. Spaugh. She employed her own counsel to resist the appointment and a trial resulted in her favor. After that suit had been instituted, and before the trial, Mrs. Spaugh was taken by Adda Jane Davis to her home. During the trial of the conservator case, and for six weeks thereafter, Mrs. Spaugh stayed at the home of Cloyd Freeman, the grandson of a deceased husband of testatrix. Freeman was then occupying as tenant the ten acres of land owned by her. While staying at Freeman's Mrs. Spaugh sent for her business agent and a lawyer to assist her in making her will. This was in March, 1915. A will was prepared by the lawyer in accordance with the directions of Mrs. Spaugh as to how she desired to dispose of her property. That will made precisely the same bequests to the two sisters of testatrix as the last will. By it the ten acres of land was given to the step-grandson, Cloyd Freeman, and $25 each to two nephews, Joseph and Edward Steele. By the last will no bequest was made to Joseph and Edward Steele, and the ten-acre tract of land was

given to Adda Jane Davis upon condition that she furnish the testatrix a comfortable home until her death. Mrs. Spaugh and Freeman could not get along agreeably, and after remaining at his home about six weeks she was at her request taken to the home of Mrs. Davis, where she remained until her death. While living at Mrs. Davis' house Mrs. Spaugh sent for two lawyers of the Moultrie county bar to prepare another will for her, and the will then executed is the will now being contested.

There is no proof of any acts or conduct of Mrs. Davis to induce Mrs. Spaugh to make the will. The mere fact that Mrs. Spaugh was at Mrs. Davis' house when the will was made and that Mrs. Davis was the principal beneficiary does not tend to prove the charge of undue influence. Undue influence that will invalidate a will must be of such character as to deprive the testator of free agency and render the act the offspring of the will of others, and the undue influence must be directly connected with the execution of the instrument and be operating at the time the will is made, producing a perversion of the mind that made the will. (*Snell* v. *Weldon*, 239 Ill. 279; *Larabee* v. *Larabee*, 240 id. 576; *Roe* v. *Taylor*, 45 id. 485.) The proof wholly failed to meet these requirements, as it also failed upon the charge of insane delusion. The bill alleged that Mrs. Davis exercised great influence over the mind of testatrix, and by reason of her sick and weakened condition sought to, and did, prejudice the mind of testatrix, prior to the making of the will, against her other relatives, and especially her sister Mary Ann Jones, so that she was not capable of making a fair, impartial and proper distribution of her estate. Evidence was introduced tending to show Mrs. Spaugh was incensed at her sister Mrs. Jones about the attitude of the Jones family in trying to get a conservator appointed for her, and that she said she did not want Mrs. Jones to have much share in her property. It does not appear that the sister Mrs. Farmer had anything

to do with the conservator·proceedings. Both sisters were given an equal amount ($25) by the will. Conceding Mrs. Spaugh became very unfriendly with and prejudiced toward Mrs. Jones, that would not amount to an insane delusion, if, notwithstanding such prejudice, Mrs. Spaugh knew and appreciated her property, the natural objects of her bounty, and understood and knew how she desired to dispose of her estate.

· That a person making his will distributes his property unequally among the natural objects of his bounty because of prejudice or unfriendliness towards some and affection or friendship for others does not establish that he labored under an insane delusion toward relatives as to whom slight provision or no provision at all is made. "An insane delusion is a belief in something impossible in the nature of things or impossible under the circumstances surrounding the afflicted individual and which refuses to yield either to evidence or reason." (*Scott v. Scott,* 212 Ill. 597.) "Insane delusion consists in the belief of facts which no rational person would have believed." (*Schneider v. Manning,* 121 Ill. 376.) "Unreasonable prejudice against relatives is not ordinarily a ground for invalidating a will, but a will may be set aside where the testator's aversion is the result of an insane delusion and his conduct cannot be explained on any other ground." (*Nicewander v. Nicewander,* 151 Ill. 156.) This court in *Owen v. Crumbaugh,* 228 Ill. 380, said: "A belief which results from a process of reasoning from evidence, however imperfect the process may be or illogical the conclusion, is not an insane delusion. An insane delusion is not established when the court is able to understand how a person situated as the testator was, might have believed all that the evidence shows that he did believe and still have been in full possession of his senses."

The greater part of the evidence heard was on the issue of unsoundness of mind. A number of witnesses,—more than twenty on each side,—testified upon the question, and,

as is usual in such cases, their testimony was conflicting, but we think the testimony of the witnesses for the proponents was much stronger and more convincing than the testimony of contestants' witnesses. It is true, the evidence showed age and disease had weakened Mrs. Spaugh physically and mentally, but the weight of the evidence was that she possessed sufficient mental capacity to knowingly and understandingly dispose of her property by will and that she did distribute her estate to those to whom she desired it to go. It would serve no useful purpose to state in this opinion the substance of the testimony upon the issue of testatrix's mental capacity. It has always been held that neither age, sickness nor debility of body will affect the capacity to make a will if sufficient intelligence remains. *Woodman* v. *Illinois Trust and Savings Bank,* 211 Ill. 578; *Pooler* v. *Cristman,* 145 id. 405; *Rutherford* v. *Morris,* 77 id. 397.

The verdict of the jury and the decree are supported by the weight of the testimony, and in this condition of the record the errors in the instructions complained of are not of such serious and prejudicial character as to justify a reversal of the decree. One or two of the five instructions complained of may be subject to criticism, but where the evidence warrants the verdict a decree will not be reversed for inaccuracies in instructions. There is no reason to believe a different verdict and decree might have resulted if none of the instructions complained of had been given. Courts of review reverse for only such errors as may have been prejudicial to the party complaining. *Heckle* v. *Grewe,* 125 Ill. 58; *Pahlman* v. *King,* 49 id. 266; *Watson* v. *Woolverton,* 41 id. 241; *Curtis* v. *Sage,* 35 id. 22.

The decree of the circuit court is affirmed.

*Decree affirmed.*