65 So.2d 678

**HORNADAY v. FIRST NAT. BANK OF BIRMINGHAM, Inc.**

6 Div. 399.

Supreme Court of Alabama.
Dec. 18, 1952.

Rehearing Denied May 28, 1953.

30

Robert Giles and Ray & Giles, Birmingham, for appellant.

Jas. H. Bradford, Memory L. Robinson, Reid B. Barnes and Lange, Simpson, Robinson & Sommerville, all of Birmingham, for appellee.

BROWN, Justice.

The appeal in this case is from the judgment of the Circuit Court of Jefferson County, at law, sustaining the validity of the will of Jacob W. Hornaday, Sr., deceased.

The proceedings were instituted in the probate court by the appellee offering the alleged will for probate and after the filing of the petition for probate the contest was filed by the appellant, Jacob W. Hornaday, Jr., an heir at law, who would have inherited from said decedent if he had died intestate and had the right to contest the will under the provisions of § 52, Title 61, Code of 1940. Braasch v. Worthington, 191 Ala. 210, 65 So. 1003, Ann.Cas.1917C, 903. The original pleading filed by the contestant set forth seven pleas numbered from one to seven, inclusive, and in the same pleading demanded or requested the probate court to transfer the case to the circuit court for trial of the issues presented by said pleas. An order was made to that effect and all the proceedings and the papers in the case were delivered to the circuit court and the case was entered upon the circuit court docket for trial. The order removing the case to the circuit court was entered on the 17th of November, 1951, and on the 19th of November the defendant filed another plea designated as "A". The plaintiff demurred separately and severally to

each of said pleas. The circuit court sustained the plaintiffs' demurrers to pleas 7 and "A" and this ruling is made the basis for appellant's assignments of error one and two.

Plea 7 avers: "The execution of the alleged will was procured by fraud perpetrated by one Paul Hornaday. And contestant avers that such fraud consisted in this, towit, that shortly prior to the date of the execution of the alleged will, which was, towit, October 3, 1949, the said Paul Hornaday falsely and fraudulently represented and caused it to be represented unto Jacob W. Hornaday, Sr., the alleged testator, that the contestant, Jacob W. Hornaday, Jr., the oldest son of the said testator, and brother of the said Paul Hornaday, was and had been guilty of perpetrating some outrageous and gross injustice, the nature of which supposed injustice being unknown to contestant, upon the wife of Jacob W. Hornaday, Sr., Elizabeth Helen Hornaday, she being the mother of contestant and of the said Paul Hornaday. And contestant avers that the said Paul Hornaday fraudulently caused false impressions to be generated in the mind of his said father, the alleged testator, that contestant had mistreated his mother in some such reprehensible manner as to be unworthy to be considered and treated as a son and member of the family. And contestant avers that the said Jacob W. Hornaday, Sr., was deceived by such false and fraudulent representations and impressions, with the result that he was influenced and led thereby to exclude the contestant from sharing in his estate, which the testator would not have done but for such false representations. And contestant avers that he had been guilty of no misconduct whatever towards his mother, and that the alleged will propounded for probate in this cause is the proximate consequence and result of the fraud of the said Paul Hornaday, as aforesaid."

Plea A avers: "The execution of the alleged will was procured by fraud perpetrated by one Paul Hornaday and contestant avers that such fraud consisted in this, towit, that shortly prior to the date of the alleged will, said Paul Hornaday falsely and fraudulently represented and caused

to be represented unto the alleged testator that contestant had been guilty of attempting to take over for himself the funds and estate of the testator, and had filed against the testator a petition seeking the appointment of a guardian for such purpose, and that the filing of such proceeding by the contestant was fraudulent, malicious, or otherwise without probable cause. And contestant avers that the testator was deceived by such false and fraudulent representations, with the result that he acted thereon and was led thereby to exclude the contestant from sharing in his estate, which the testator would not have done but for such false representations. And contestant avers that such representations were false and fraudulent, and that he had been guilty of no bad faith in the filing of such proceeding, and that the alleged will propounded for probate in this cause is the proximate consequence and result of the fraud of the said Paul Hornaday as aforesaid."

The plaintiff's demurrer to each of said pleas embodied 49 grounds. Ground 38 of the demurrer is that it does not sufficiently appear from said ground (of contest) that said Paul Hornaday made the representations alleged with knowledge of their falsity. Ground 39 is that it does not sufficiently appear from said ground that said Paul Hornaday made the alleged representations with intent to deceive the said testator. Ground 47 of the demurrer is that "The averment of said ground of contest that said Paul Hornaday fraudulently caused false impressions that contestant had mistreated his mother in some such reprehensible manner as to be unworthy to be considered as a son and member of the family, is a mere conclusion of the pleader and not supported by sufficient allegations of fact, and does not sufficiently show, with the other allegations, a sufficient ground of contest of said will." Ground 48 of the demurrer is that, "The allegation in said ground of contest that the contestant was and had been guilty of perpetrating some outrageous and gross injustice upon the wife of the testator is a mere conclusion of the pleader and is insufficient to show, in connection with all other allegations, a ground of contest of

said will." Probably other grounds, which are numerous, were well taken.

Said pleas 7 and A undertake to set up positive or actual fraud as contradistinguished from undue influence, as to which the rule of pleading requires the facts showing such fraud to be stated. Borton v. Borton, 225 Ala. 457, 143 So. 468; Moore v. Heineke, 119 Ala. 627, 24 So. 374; 57 Am.Juris. p. 270, § 371. The last cited authority states the true rule to be as follows:

"Fraud invalidating a will is said to be any trick, deception, or artifice by which the testator is so circumvented, cheated, or deceived as to fall into error respecting the disposition of his property. If the testator, under a belief of the truth of false and fraudulent statements made to him, is influenced by them, and makes a will disinheriting one who, but for the testator's belief in the truth of such false statements, would have been provided for in it, the will is the product of fraud and subject to be declared invalid on that ground. But intent to deceive the decedent is an essential of fraud avoiding a will, in the absence of any element of undue influence. Moreover, to invalidate a will the fraud must have affected the testator in the very act of making his will and at the time the will was executed. * * *"

Otherwise stated, "fraud is a conclusion of law from facts stated and proved and when it is pleaded, at law or in equity, the facts out of which it is supposed to arise must be positively averred." Terrell v. Marion County, 250 Ala. 235, 34 So.2d 160, 163.

[3] While it is not permissible to plead hypothetically on information and belief, it is permissible, if the pleader is without knowledge of the facts, to allege that he is informed and believes and alleges the facts to be as stated. Wright, Adm'r v. Evans, 53 Ala. 103; Ex parte Lackey, 228 Ala. 106, 153 So. 289; 49 C.J. pp. 148–149, § 163; 71 C.J.S., Pleading, § 82; 71 C.J.S., Pleading, § 107, p. 252, notes 32 and 33; 71 C.J.S., Pleading, § 40, p. 103.

The statute, Code of 1940, Tit. 61, § 63, provides: that upon removal to the cir-

cuit court, "The issues must be made up in the circuit court as if the trial were to be had in the probate court, and the trial had in all other respects as trials in other civil cases in the circuit court." Coghill v. Kennedy, 119 Ala. 641, 24 So. 459. This makes applicable the provisions of § 224, Title 7, Code of 1940, which provides:

"The plea must consist of a succinct statement of the facts relied on in bar or abatement of the suit, and no objection can be taken thereto, if the facts are so stated that a material issue can be taken thereon." This statute does not change the common law rule that it is necessary in a plea averring fraud to state the facts constituting the supposed fraud. Phoenix Ins. Co. v. Moog, 78 Ala. 284, 56 Am.Rep. 31; Carmelich v. Mims, 88 Ala. 335, 6 So. 913.

■ A plea which states conclusions is bad and subject to demurrer. Russell v. Bush, 196 Ala. 309, 71 So. 397.

■ The circuit court did not err in sustaining the plaintiff's demurrer to defendant's pleas 7 and A.

Rule I of Supreme Court practice provides: "In assigning errors, it shall be sufficient to state concisely, in writing, in what the error consists, which assignment must be written upon the transcript." Code of 1940, Tit. 7 Appendix, p. 1004.

■ Assignment of error 3 is stated thus: "The trial court erred to the prejudice of appellant in excusing more than one adversely interested witness from the rule, and in allowing the witness Dan B. Flautt, James H. Bradford, and Paul Hornaday all to remain within the court room during the trial of the cause, over the objection and exception of contestant." The sole basis of this assignment is the following incident occurring immediately preceding the trial and after the jury had been selected.

"Mr. Ray: I think since the Bank is the Proponent of the will and Mr. Flautt is excused from the rule and Mr. Bradford who is also one of the trial lawyers and one of the witnesses is sufficient for their presence here and all the rest of them ought to be under the rule.

"The Court: Who should be under the rule? You think Mr. Hornaday should be under the rule?

"Mr. Ray: Yes.

"The Court: I disagree with you. He is a real party under the contest. It was filed by the First National Bank because they are executors.

"Mr. Ray: If you regard him as a party to the contest rather than the bank, that makes it a different situation.

"Mr. Ray: I believe I will note an exception on that ruling.

"The Court: All right."

The vice in this assignment is illustrated by the observation in Kinnon, as Adm'r, v. Louisville & N. R. R. Co., 187 Ala. 480, 65 So. 397, as follows:

" * * * Precision has been ever regarded as of the essence of the practice; and generality has also been always treated as offensive to a proper practice in assigning errors. And, since the long-established practice exacts specifications of error in the action of the trial court, an appellant cannot be allowed to interpret the legal effect of the action of the court and translate his interpretation thereof into an efficacious assignment of error. He must specify the action of the trial court of which he would have review and revision."

The only specific ruling made in the above cited incident is the statement by the court, "I disagree with you. He is a real party under the contest. It was filed by the First National Bank because they are executors." An extensive list of the authorities and the holdings made by the court will be found in the annotation to Rule I, Supreme Court Practice, Code of 1940, Tit. 7, p. 1006 and the substance of the rulings made in applying it. The most recent case cited holding an assignment too general and indefinite is Spurlock v. J. T. Knight & Son, 246 Ala. 283, 20 So.2d 525, 526. The assignment of error held insufficient in that case is stated in the following language: " 'The court erred in not permitting the plaintiff to show that the defendant paid the plaintiff for metal, beeswax, hides and tallow immediately after August 9th 1938, all of which had been received by the defendant

immediately prior thereto, the same being further cross-examination of defendant witness, Dismuke. (Tr. p. 21.)'"

Assignments of error 4, 6, 7, 10, 11, 12 and 13 are affected with the same vice as assignment 3.

[7] The predicate for assignment of error 5 is that the trial court erred in sustaining appellant's objection and in granting proponent's motion to exclude testimony as to a statement made by a physician in Columbus, Ohio, after giving Hornaday, Sr., the testator, some medicine. The objection and motion were properly sustained. The question called for hearsay testimony and was indefinite as to the physician, who was not named in the question.

[8] The 8th assignment of error is without merit. The question of contestant to the witness Meadows's inquiring as to the sanity of Mrs. Hornaday, the wife of the testator was not material to any issue in the case. The objection was properly sustained.

The predicate for assignment of error 9 was as to receiving in evidence a copy of the decree of the probate court dated Oct. 1, 1949, declaring Jacob Hornaday, Sr., to be of sound mind and dismissing the petition. Said assignment refers to page 222 of the record. An examination of said page discloses no ruling of the court and no exception thereto. What appears is the following: "Q. And that is an official certified copy? A. Yes, sir. Mr. Robinson: We offer it in evidence. Mr. Ray: We object to it. The Court: I will hear your objection later. Mr. Ray: Yes, sir. Mr. Robinson: Mark it our next exhibit, Exhibit 4."

The issues presented by defendant's pleas one to six, inclusive, are that said alleged will was not duly executed according to law; that said alleged will is not in fact the last will and testament of the deceased that the alleged testator at the time of the execution of the alleged will was of unsound mind; that the execution of the alleged will was procured by undue influence on the part of one Paul Hornaday; that the execution of the alleged will was procured by undue influence exercised on the testator by a certain person or persons whose names are unknown to the contestant; the execution of the will was procured by undue influence exercised upon the testator by one Paul Hornaday together with another person or persons whose names are unknown to the contestant.

The evidence in the case goes to show that Jacob W. Hornaday, Sr., the testator, now deceased, was a machinist by occupation and trade, that he was a positive character, conservative in character and conduct and frugal in his habits and that he received a salary for many years as an employee of the Hardy-Tynes Mfg. Co. By his savings and investments he had accumulated a substantial estate, consisting of real estate and personal property, stocks, bonds and money, some of which he kept in a lock box in the First National Bank in his own name. He also maintained a joint checking account in the same bank in the name of himself and his wife. The evidence shows that Mrs. Hornaday was also conservative and a worker, that she performed her own housework, did the washing and the cooking and was frugal in aiding her husband in accumulating the fortune which was in his possession at the beginning of the controversy between him and his son, the contestant, Jacob W. Hornaday, Jr.

About July 11, 1949, the contestant came to Birmingham, looked into the status of the accounts of his father, ascertained that he had money in the bank in the safety deposit box and maintained a joint checking account with his wife. Contestant, seeming to doubt his father's ability to handle his own affairs, induced his father to change the joint checking account and to take the stocks, bonds and money out of the box in the name of Mr. and Mrs. Hornaday, Sr. and place the valuables in another box in the name of Mr. Hornaday, Sr. and the contestant. When Mrs. Hornaday discovered the contestant was interfering with the status of the bank account, she was sick, really sick unto death, suffering from cancer of the liver or stomach. As the result of the son's action an acrimonious controversy seems to have resulted in which she advised her son that it would be better for him to go back to Atlanta where he

lived and leave them alone. Notwithstanding this, however, shortly prior to Sept. 30, 1949, Jacob Worley Hornaday, Jr. filed a petition in the Probate Court of Jefferson County, seeking to have his father declared insane and incapable of handling his own affairs. When the writ of lunacy was issued and delivered at the Hornaday home, Mr. Hornaday and his wife expressed great resentment and the evidence goes to show they were outraged by said proceeding. The petition was heard by the court on September 20th and October 1st, resulting in a decree declaring the testator of sound mind and the petition was dismissed.

Immediately thereafter the testator expressed a desire to his counsel to rewrite his will or to make a new will. On the 3rd of October thereafter the will under contest was written for Mr. Hornaday, Sr. by Mr. Bradford, his solicitor and counsel. The evidence shows it was executed in Mr. Bradford's office and witnessed by two witnesses in the presence of the testator and in the presence of each other.

After issue joined trial commenced on the 13th of November 1951, and continued through several days during which thirty witnesses were examined and much documentary evidence received, constituting a record of over 600 pages, which we have examined with much care.

There is no contention here but what the evidence presented questions for jury decision. Although the defendant requested the court to give affirmative charges in his favor, said charges were refused, but the failure to give such charges is not assigned as error. We have treated the pleadings both in the nisi prius court and the laxity of the assignments of error, the pleading in this court. We now proceed to consider the giving and refusal of the charges requested by the parties upon which the remaining assignments of error are predicated and also the motion for a new trial rested.

■ Charges 5, 6, 8 and 9, given at the instance of the proponent (appellee), stated correct propositions of law and were given without error. Taylor v. Kelly, 31 Ala. 59, 72, 68 Am.Dec. 150; Bulger v. Ross, 98 Ala. 267, 271, 12 So. 803; Bancroft v. Otis, 91 Ala. 279, 291, 8 So. 286;

Cox v. Hale, 217 Ala. 46, 114 So. 465; Kahalley v. Kahalley, 248 Ala. 624, 28 So.2d 792; Hyde v. Norris, 250 Ala. 518, 35 So. 2d 181; Wilson v. Payton, 251 Ala. 411, 37 So.2d 499; Page on Wills, Vol. 1, p. 274.

■ We note that assignment of error 18 is predicated on the giving of charge 11, the assignment of error referring to page 14 of the record. No such charge numbered 11 appears in the record before us on page 14. Said assignment is, therefore, without merit. Rule No. I, Supreme Court Practice, Code of 1940, Tit. 7 Appendix, p. 1004; Kinnon, Adm'r, v. Louisville & N. R. R. Co., 187 Ala. 480, 65 So. 397.

■ Charge X made the basis of assignment of error 19 appearing on page 23 of the record asserts not what the law is, but what it is not. It has a tendency to confuse the jury. It is not couched in the correct and appropriate terms of the law and was refused without error. Bush v. The State, 211 Ala. 1, 2, 100 So. 312; Hudson v. State, 217 Ala. 479, 481, 116 So. 800.

■ Charge 35 states in effect an affirmative proposition that the testator's mind was so weak that he did not know or understand what he was doing at the time he signed the will and was invasive of the province of the jury. Therefore said charge was refused without error. The proposition sought to be embodied in Charge 35 was substantially stated in charges 22 and 36 given at the request of the appellant.

■ Charge 9, page 24 of the record, the basis of assignment of error 21, states a negative proposition and has a tendency to mislead, justifying its refusal. Moreover it assumes that the evidence shows the mental disorder that occurred in 1947 established the fixed lunacy of the testator and was an invasion of the province of the jury. Saxon v. Whitaker's Executor, 30 Ala. 237.

■ The defendant's or appellant's refused charge 11, the basis of assignment of error No. 22, had a tendency to mislead and confuse the jury and was argumentative in form and substance, which was sufficient to warrant its refusal. It also pre-

termits that the testator was affected with fixed insanity on the 30th of September, 1949, the date on which the probate court declared him of sound mind.

Refused charge 47, the basis of appellant's assignment 23, was bad because of the use of the word "improper" in connection with "or undue influence", which has a well defined meaning.

The appellants in brief concede that proponent's given requested charge No. 5 "contains a classic statement of the essential requisites of testamentary capacity", but insists that it is misleading and precludes the jury from basing a verdict on the existence of an insane delusion affecting the testator at the time of the execution of the will, the argument being that he had a delusion that some person was seeking to take away from him the control of his bank account and other property and as expressed in the testimony was attempting to get "in the driver's seat" and control the disposition of his funds in the bank before his death.

" 'An insane delusion is a belief in something impossible in the nature of things or impossible under the circumstances surrounding the affected individual and which refuses to yield either to evidence or to reason.' 'A delusion is a fixed belief in the proposition which has no foundation in evidence, and which is so extravagant that a reasonable man would not adhere to it. It is a fixed belief where there is no evidence to such belief.' Scott v. Scott, 212 Ill. 597, 72 N.E. 708; Farmer v. Davis, 289 Ill. 392, 124 N.E. 640. * * *." 1 Page on Wills, 141, p. 290; Batson v. Batson, 217 Ala. 450, 453, 117 So. 10; Tucker v. Tucker, 248 Ala. 602, 28 So. 2d 637.

There is ample evidence arising out of contestant's acts in instituting the proceedings in the probate court to have the testator declared insane and in seeking his own appointment as the guardian of testator's person and estate of which the bank in which the testator's funds and properties were on deposit, was notified. There was also evidence, undisputed, that the contestant, Worley Hornaday, Jr., induced his father to remove his bonds and money from a safety deposit box in the bank and place them in a box accessable to the contestant and testator. After careful consideration, we find no evidence that the testator was suffering from an insane delusion within the meaning of the law.

We have made diligent search through the transcript containing 640 pages and are clear to the opinion that there was ample evidence to warrant the jury in sustaining the validity of the will and that the trial court did not err in overruling the motion for a new trial. That the will was the result of the interference by the contestant, seeking to have his own father declared insane without consulting the rest of the family, the mother and Paul, before taking such a drastic step, and that these facts warranted the testator's conclusion that the contestant was seeking to control his property. Browning v. Budd, (1848), 6 Moore, P.C.A. 430, 13 Eng.Reprint 749; 28 A.L.R. p. 797; Saxon v. Whitaker's Executor, 30 Ala. 237.

The judgment of the circuit court should be and it is affirmed. So ordered.

Affirmed.

LIVINGSTON, C. J., and FOSTER and LAWSON, JJ., concur.

On Rehearing.

PER CURIAM.

Appellant first objects to a part of a quotation in the opinion, supra, from 57 Am. Jur. section 371, as follows: "Intent to deceive the decedent is an essential of fraud avoiding a will, in the absence of any element of undue influence," claiming that it violates section 108, Title 7, Code. Sections 107, 109, 110, 111 and 112 are all on the same subject and define fraud and deceit.

The facts constituting fraud must of course be alleged and be sufficient to that end. Barksdale v. Davis, 114 Ala. 623, 22 So. 17; Ellis v. Crawson, 147 Ala. 294, 41 So. 942.

But the question here is what facts are sufficient. The opinion in this case states that certain grounds of demurrer to pleas 7 and A, which set up fraud by Paul Hornaday, raise the point that he is not alleged to have had knowledge of the falsity of the representations or that he made them with intent to deceive, whereas section 108, supra, is satisfied in that respect with an allegation that they were "made by mistake and innocently, and acted on by the opposite party". The opinion approves the judgment sustaining the demurrer to these pleas. They were clearly subject to other grounds pointed out in the opinion, as will be here shown.

It is declared in the opinion that pleas 7 and A undertake to set up "positive or actual fraud," implying that such is the nature of the fraud in the absence of undue influence necessary as a defense to an application to probate a will. It is contended on this rehearing that the principle asserted conflicts with that feature of section 108, supra (copied above), and that the statutory definition of fraud should control. The statute to that effect first made its appearance in the Code of 1907, along with other provisions declaratory of the common law. Hudson v. Moore, 239 Ala. 130, 133(9), 194 So. 147. We think that feature of section 108 is an effort to enact a principle of constructive fraud. The same principle is frequently stated without reference to the statute. Hagood v. Knight, 257 Ala. 64, 57 So.2d 616; Gulf Electric Co. v. Fried, 218 Ala. 684, 119 So. 685, which quotes from Ball v. Farley, 81 Ala. 288, 1 So. 253. The Fried decision was rendered long after section 108, supra, had been inserted in the Code of 1907, but did not refer to it. The Ball case, from which the Fried opinion quotes, was rendered long before the statute was effective.

Constructive fraud at common law is the breach of a *legal* or *equitable duty* which, irrespective of the moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate public or *private confidence,* or to inspire public interest. It usually arises from a breach of duty where a relationship of trust and confidence exists. Neither actual dis-honesty nor intent to deceive is an essential element of constructive fraud. 37 C.J.S., Fraud, § 2, pp. 211–213. At common law, therefore, whether the false representation, not known to be false but innocently made, is sufficient to justify vacating the instrument induced by it, depends upon the existence of a legal or equitable (not merely moral) duty to tell the truth. If the parties are dealing at arms' length and no confidential relations exist or other duty owing to know and tell the truth, innocence and good faith in making a false representation though acted on is not a fraud.

When no legal duty exists the false representation must be knowingly or recklessly made. Einstein v. Marshall, 58 Ala. 153. It is there said to be different when the question arises between the seller and buyer of property. In such case the seller should restore the ill-gotten gain, and as there pointed out: "A representation, however, honestly believed to be true by the party making it, is not, independently of the duty cast on him to know the truth, a good cause of action, although it may prove to be untrue".

With reference to representations by a vendor to his proposed vendee as to land involved in the sale, a duty exists to know as well as to tell the truth. Harton v. Belcher, 195 Ala. 186, 70 So. 141; Tillis v. Smith Sons Lumber Co., 188 Ala. 122, 65 So. 1015; Shahan v. Brown, 167 Ala. 534, 52 So. 737.

The quotation in the opinion, supra, in this case from 57 Am.Jur. 270, requires in such a will contest actual fraud resulting from the fraudulent intent "in the absence of any element of undue influence". We take that to mean in the absence of circumstances which make it the duty in law to know that what he represents is the truth. That quotation cites In re Estate of Newhall, 190 Cal. 709, 214 P. 231, 28 A.L.R. 778; Gockel v. Gockel, Mo.Sup., 66 S.W.2d 867, 92 A.L.R. 784. See, also, Gittings v. Jeffords, 292 Mo. 678, 239 S.W. 84. They declare the rule to be as stated.

This Court in Moore v. Heineke, 119 Ala. 627(10), 24 So. 374, asserted the principle of fraud in a will contest as requiring deliberate false representation and deception.

To the same effect are Thompson on Wills, 3d Ed., section 141; 1 Page on Wills section 179.

In such a will contest there must be made a false statement of a material fact intended to be acted on and known to be false and which was a material inducement to the execution of the will, in reliance on the truth of the representation, or, instead of being known to be false, the statement must be made under circumstances making it the duty in law of the declarant to know and tell the truth as when the duty arises by reason of confidential relations.

We do not find fault therefore with the opinion in this case, as suggested by counsel upon rehearing, in that it means to assert that a plea of fraud as a defense to an application to probate a will must show a positive or actual sort of fraud and not merely constructive fraud, as provided in section 108, supra, and the common law, in the absence of any element of undue influence or confidential relations, stated in the plea to exist between the testator and the declarant.

Pleas 7 and A, now under consideration, do not allege a false representation of facts in such clear terms as to justify an application of the principle of fraud on any theory. They are subject to that feature of the demurrer which pointed out the fact that the facts attempted to be alleged are but indefinite conclusions, and so vague and uncertain as not to be sufficient on which to predicate fraud of any sort.

We have considered the other contentions made in the briefs on application for rehearing, but they do not seem to require discussion and are not well taken.

The application for rehearing should be overruled.

The foregoing opinion on rehearing was prepared by FOSTER, Supernumerary Judge of this Court while serving on it at the request of the Chief Justice, under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Application for rehearing overruled.

All the Justices concur.