This is a will contest case. Contestants appeal from a final judgment, based on a jury verdict, finding Proponents/Appellees to be the sole beneficiaries under a last will and testament of Agnes R. Warren, executed July 19, 1977, as opposed to an earlier will and codicil of Mrs. Warren, proffered by Contestants and dated December 2, 1970. We affirm.
 FACTS
Hermon E. Warren, who died in August 1977, and Agnes R. Warren, who died in December 1981, were husband and wife. No children were born of this marriage; however, Mr. and Mrs. Warren each had three children by prior marriages. Hermon E. Warren's two surviving children, and the children of one deceased child, are the Contestants. Agnes R. Warren's three children are the Proponents.
Because the will here under contest involves Mrs. Warren's exercise of a testamentary power of appointment granted her in her husband's will, we look first to the pertinent provisions of that will. Mr. Warren's will, dated January 22, 1977, left to his natural children certain designated personal property, such as jewelry, clothing and personal effects; an undivided 1/2 interest in all *Page 1036 
household furniture, rugs, pictures, books, silverware, china, kitchen furnishings, etc., as well as total interest in any automobiles owned by him at his death.
Finally, Mr. Warren divided his "residuary" estate into two trusts, with Merchants National Bank of Mobile appointed as trustee. Each trust constituted 50% of Mr. Warren's adjusted gross estate, less those items of personal property bequeathed to his children. As to the disposition of both trusts, we quote from pertinent portions of Mr. Warren's will:
"TRUST ONE
 "The Trustee shall manage and control Trust No. One for the exclusive use and benefit of my widow, AGNES REDING WARREN, and shall pay and distribute to her in as nearly equal monthly installments as may be practicable, but at least annually, all of the net income accruing therefrom so long as she may live and, upon her death, shall pay, distribute and deliver the entire then corpus of Trust No. One, together with all undistributed income and profits therefrom, in such manner as she, my said widow, by her last will and testament, shall direct and appoint.
"TRUST TWO
 "The Trustee shall manage and control Trust No. Two for the benefit of my widow, AGNES REDING WARREN, and shall pay and distribute to her in as nearly equal monthly installments as may be practicable all of the net income accruing therefrom so long as she may live and, upon her death, shall divide such trust estate into as many parts as I have then living children and deceased children leaving one or more lineal descendants surviving, and shall pay and deliver one such share, free from trust, to each living child of mine and one such share, free from trust, to the lineal descendant, or per stirpes to the lineal descendants, of each deceased child of mine."
We turn our attention now to those facts leading up to the execution of the will here in question. Pursuant to a prior will, executed by Agnes Warren in December 1970, her entire estate was to pass to her three natural children. Additionally, by way of a codicil executed the same date, she exercised the power of appointment granted to her under Mr. Warren's will in favor of his three natural children.
Hermon Warren became ill and was hospitalized in July 1977. Shortly thereafter, certain of the Proponents arrived at the Warren home to stay with their mother. During this period, Arthur Ousley, one of the Proponents and Mrs. Warren's natural son, examined a copy of Mrs. Warren's 1970 will and codicil; whereupon, he informed his mother that all her property and assets, under those instruments, would pass to Mr. Warren's natural children, as opposed to her own.
After being told by his mother that this was not her desire, Mr. Ousley retained a local attorney to prepare a new will for her, leaving everything, including property over which she might have a power of appointment, to himself and her other two children. This new will was executed by Mrs. Warren on July 19, 1977. The next day, Mrs. Warren was placed in Villa Mercy Nursing Home by her children. Within a few months, she was legally declared mentally incompetent, and a guardian was appointed to manage her affairs.
After Mr. Warren's death, his will was admitted to probate, and its provisions promptly carried out. The proceeds from the sale of the family homeplace were divided equally between Mr. Warren's children and Mrs. Warren's children. Following Mrs. Warren's death, her 1977 will was admitted to probate. Contestants' efforts, seeking to invalidate this will and probate her 1970 will, were unsuccessful. Contestants appeal.
 ISSUES
Although multiple grounds of contest were alleged and pursued at trial, the only ground involved in the issues presented on *Page 1037 
appeal is the alleged fraud in the procurement of Mrs. Warren's 1977 will. Essentially, Contestants claim that Mr. Ousley misrepresented a material fact to his Mother when he told her that, under her 1970 will and codicil, all of her property would go to Mr. Warren's children. Because only the property in the 1970 codicil over which she had the power of appointment, in fact, would have gone to his children, Contestants insist that this "misrepresentation" resulted in Mrs. Warren's execution of the 1977 will, in which she exercised this power in favor of her own children.
First, Contestants contend the trial judge erred in denying their motion for directed verdict (and, subsequently, their post-trial motion for JNOV), asserting that Proponents' misrepresentation of a material fact, as a matter of law, constituted fraud in the procurement of Mrs. Warren's 1977 will.
Alternatively, Contestants allege that the jury's verdict, and the judgment entered thereon, should be set aside as being so against the great weight and preponderance of the evidence, bearing on the factual issue of fraud, as to be clearly wrong and manifestly unjust.
 DECISION I. Directed Verdict/JNOV Issue (Sufficiency of the Evidence) Hanson v. Couch, 360 So.2d 942 (Ala. 1978), stated the applicable standard of review:
 "A motion for judgment notwithstanding the verdict tests the sufficiency of the evidence in the same way as does the motion for directed verdict at the close of all the evidence. Ala.R.Civ.P. 50, Committee Comments. Granting the motion for judgment notwithstanding the verdict says, without weighing the credibility of the evidence, there can be but one reasonable conclusion from the evidence as to the proper judgment. 5A Moore's Federal Practice ¶ 50.07[2], at p. 50-76.
 "When reviewing the propriety of a trial court's order granting a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the party who secured the jury verdict. Spurlin v. General Motors Corp., 528 F.2d 612 (5th Cir. 1976); White v. Packer, 345 So.2d 312
(Ala.Civ.App. 1977). See Justice Maddox's dissent in Bethune v. City of Mountain Brook, 336 So.2d 148, at p. 151 (Ala. 1976). Such motion should be denied if there is any conflict in the evidence for the jury to resolve and the existence of such conflict is to be determined by the scintilla rule. White v. Packer, supra; McLarty v. Wright, 56 Ala. App. 346, 321 So.2d 687 (1975)."
Citing Hornaday v. First National Bank of Birmingham,259 Ala. 26, 65 So.2d 678 (1952), Contestants, arguing for JNOV, insist that, because of the confidential relationship between mother and son, they need to prove only constructive fraud, as opposed to the higher burden of proving actual fraud, in order to invalidate the 1977 will. Applying the directed verdict/JNOV standard of review enunciated in Hanson, supra, we find it unnecessary to decide as between the two degrees of fraud in this instance. Even if we assume, here, that proof of constructive fraud is the applicable burden, the evidence, when viewed most favorably to Proponents presented a question of fact for the jury. Indeed, such was the holding of Hornaday.
See, also, Cook v. Brown, 393 So.2d 1016 (Ala.Civ.App. 1981).
 II. The New Trial Issue (The Weight and Preponderance of the Evidence)
Although Contestants present the directed verdict/JNOV issue, they candidly acknowledge that their burden to prove fraud in the procurement of the will, as a matter of law, is a heavy one. Consequently, because of the legal presumption of the validity of the 1977 contested will, coupled with the further acknowledgement of Mrs. Warren's unconditional power of appointment, Contestants place the primary emphasis of their argument on an alternative allegation of error: that the trial court erred in its *Page 1038 
denial of their motion for a new trial, based on the great weight and preponderance of the evidence.
As stated in Linnard v. Shields, 368 So.2d 14 (Ala. 1979):
 "The case was tried before a jury, which found that the instrument was valid and was the will of the testatrix. The contestant filed a motion for a new trial, and claimed that the jury's verdict was contrary to the evidence. The trial court denied the motion. Contestant appealed.
 "The testimony given at trial was in conflict as to the mental and physical condition of the testatrix during the time period surrounding the making of her will. There is a well-established doctrine in this state which has recently been reiterated by this Court in Fletcher v. DeLoach, 360 So.2d 316 ([Ala.] 1978), which states:
 "`In cases of this nature, the verdict of the jury cannot be overturned unless shown to be clearly wrong and unjust. Wilson v. Payton, 251 Ala. 411, 414, 37 So.2d 499, 501 (1948); Watkins v. Yeatman, 189 Ala. 370, 66 So. 707 (1914). The refusal of the trial judge to grant the appellant-proponent's motion for new trial strengthens this presumption in favor of the verdict. Johnson v. Howard, 279 Ala. 16, 22, 181 So.2d 85, 91 (1965).'" 368 So.2d at 15.
Although Linnard, supra, dealt with mental incapacity to execute a will, rather than fraud in its procurement, the new trial standard of review set out therein is equally applicable here. As Contestants insist, however, despite a presumption of correctness accorded the trial court in its refusal to grant their motion for new trial, if, after indulging in this presumption, the appellate court finds the preponderance of the evidence so decided as to establish that the verdict is unjust, that court is duty bound to set it aside and order a new trial.
It should be noted that this new trial standard is called into play only if there is sufficient evidence to overcome a motion for directed verdict. Otherwise, if a motion for directed verdict was refused, but should have been granted for lack of requisite proof, a post-trial motion for JNOV is due to be granted, rather than the granting of a motion for a new trial. A judgment, where the challenge is grounded on the objective JNOV test, does not carry with it on appeal a presumption of correctness, as does the trial court's ruling where the evidence is tested against the more subjective new trial standard. See First Alabama Bank of Montgomery, N.A. v.Coker, 408 So.2d 510 (Ala. 1982). (We note an inadvertence in footnote 1 of Coker. The word "sufficient" in the last sentence of that footnote should read "insufficient.")
As is our duty when, as here, the weight and preponderance of the evidence test is invoked, we have read and considered all the evidence of record. A recitation of its details would serve no useful purpose. A few observations will suffice.
Hermon Warren's will gave Agnes Warren an absolute power of disposition by appointment over certain of his assets (i.e., Trust One). In other words, she was to enjoy such assets for life, and, then, through her power of appointment, dispose of them by will as she, in her sole discretion, saw fit. This she did. As we have earlier concluded, Contestants' argument that Proponents' discussions with their mother, concerning her 1970 will and codicil, constituted fraud, as a matter of law, is without merit.
The jury was free to conclude, if anything, that Proponents may have influenced their mother to do not only that which she had every legal right to do, pursuant to Mr. Warren's directives (i.e., exercise her power of appointment in favor of whomever she pleased), but also that which she most naturally wished to do. Any questions as to the existence vel non of fraud were merely factual, and properly submitted to the jury.
Furthermore, the jury was free to reject any inference of undue influence amounting to fraud, despite the element of confidential relationship, on the factual basis that such influence as may have been exerted was not adverse as among her own children, *Page 1039 
but only as between her children on the one hand and Mr. Warren's children on the other. It goes without saying that Mrs. Warren could not have been fraudulently induced into following a course of action which she, of her own free will, and in accordance with her natural desires, preferred to follow. Such a conclusion was within the jury's factfinding prerogative under the reasonable inferences raised by the evidence of record.
The common thread running through Contestants' "preponderance of the evidence" argument is summarized in the concluding paragraph of their brief:
 "It was the intent of both Hermon Warren and Agnes Warren that their separate estates go to each one's children. The fraudulent conduct of Proponents has frustrated the testamentary plans of Hermon and Agnes Warren and has produced a result intended by no one except the Ousley children."
While this may be excellent jury argument, amply supported by reasonable inferences from the evidence, we are not convinced that the jury's findings of contrary inferences are so irrational as to result in an unjust verdict. In the first place, the jury was free to infer from the evidence, or from the lack thereof, that Mrs. Warren's separate estate, which was to pass to her natural children under her 1970 will, was of such nominal value as to render her children's representations substantially true.
As to the "testamentary plans" of Hermon and Agnes Warren, we can only glean those plans from the clear and unequivocal terms of their respective last wills. It was Mr. Warren's prerogative to leave his property as he saw fit. He chose to establish two separate trusts of equal parts, aggregating substantially all of his assets, for the use and benefit of his wife during her lifetime, if she survived him, with one-half of the total trusts remaining upon her death passing to his children; and she was given the absolute power of appointment with respect to the other half. She exercised that power in favor of her children. This was the "testamentary plan" presented to the jury and upon which it rendered its verdict, effectuating virtually an even division of the marital estate between the two sets of children.
Mr. Warren could have effected the passage of all his property to his children simply by withholding any power of appointment from his wife with respect to any part of the trust. Because he gave his wife the absolute power of appointment, under the evidence before us, we are unwilling to say that a jury verdict upholding her exercise of that right, as against a claim of fraudulent inducement, should be set aside as unjust, particularly, where her exercise of that power was in favor of the natural objects of her bounty, in equal shares.
Therefore, the judgment of the trial court validating Mrs. Warren's 1977 will, is due to be, and hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, BEATTY and ADAMS, JJ., concur.